On petitioners' motion to require supplementation of record on judicial review of the validity of an administrative rule, filed April 23, motion denied November 15, reconsideration denied December 22, 1976, petition for review denied April 26, 1977

## INTERNATIONAL COUNCIL OF SHOPPING CENTERS et al, *Petitioners,*

*v.*

## OREGON ENVIRONMENTAL QUALITY COMMISSION et al, *Respondents.*

(CA 5767)

556 P2d 138

Bruce H. Anderson, and Coons, Cole & Anderson, Eugene, appeared for the motion.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Al J. Laue, Assistant Attorney General, Salem, appeared contra.

SCHWAB, C. J.

**SCHWAB, C. J.**

This proceeding arises from a petition for direct review of administrative rules[1] adopted by the respondent Oregon Environmental Quality Commission (EQC). Presently before us is petitioners' motion to require supplementation of the record on judicial review.

The record transmitted to this court by respondents includes only copies of the rules in question and excerpts from the Administrative Rules Bulletin announcing intent to consider adoption of the rules, notice of public hearing and certification of adoption of the rules. Petitioners move to require respondents to file with this court, in essence, everything that was before the EQC when considering adoption of the rules in question. Specifically, petitioners contend the record should include a verbatim transcript of all hearings, all written material submitted to the EQC, including scientific or other evidence, and all additional material before the EQC, such as staff reports.

Our starting point is ORS 183.400(1): "The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases * * *." The manner for review in contested cases includes transmittal to us "of the entire record of the proceeding under review." ORS 183.482(4). Read together, ORS 183.400(1) and 183.482(4) would seem to support petitioners' request that we review the entire record in this proceeding.

Respondents, on the other hand, rely on ORS 183.400(3):

> "The court shall declare the rule invalid only if it finds that the rule: (a) Violates constitutional provisions or; (b) exceeds the statutory authority of the agency or; (c) was adopted without compliance with applicable rulemaking procedures."

---

[1] Rules for Indirect Sources, OAR 340-20-100 through 340-20-135.

Respondents contend the record already transmitted is sufficient to review for compliance with rulemaking procedures. Respondents also contend we need do no more than lay the text of the rules in question next to the text of the constitution and the statutes defining the EQC's authority in order to review for compliance with constitutional and substantive statutory provisions.

Petitioners strenuously disagree. Petitioners first argue that all administrative rules must be "based on more than intuition and good intentions"; that a rule without any factual basis is unconstitutional, presumably on substantive due process grounds, because it is "arbitrary" or "irrational."[2]

Petitioners next argue that facts must be produced showing a connection between an agency's statutory authority and its rules. For example, the EQC's authority is to "abate and prevent" air pollution. ORS 468.285—468.350. Petitioners claim that without a more extensive record it is impossible to know whether the Rules for Indirect Sources, note 1, supra, will prevent air pollution or, despite the EQC's "good intentions," prove counterproductive and actually increase air pollution.[3]

---

[2] We express no view on the merits of the argument that administrative rules must have a factual basis other than to note that agencies with mandates to protect, for example, the environment, consumer safety and occupational health must make frequent policy judgments based on uncertain information from the very frontiers of scientific knowledge. The "facts" that are the basis of such policy judgments are simply not provable in the normal judicial sense of evidence and proof. In a case involving the possible health hazards created by the discharge of asbestos into Lake Superior, the court stated, "plaintiffs' case is based only on medical hypothesis and is simply beyond proof." *Reserve Mining Co. v. United States,* 498 F2d 1073, 1084 (8th Cir 1974), *modified after rehearing en banc,* 514 F2d 492 (8th Cir 1975). It may well be, however, that a presentation based only on scientific hypothesis, if found persuasive by an agency with expertise in the area, must be deemed a sufficient predicate for adoption of curative or preventative rules.

[3] 1 F. Cooper, State Administrative Law 259-62 (1965), and 2 F. Cooper, supra at 788-96 (1965), collect numerous cases that have struck down administrative rules on the grounds they were "arbitrary" or "unreason-

■ The unarticulated premise underlying petitioners' arguments is that the factual basis for administrative rules must appear in *the record of the rulemaking proceeding*. For the reasons stated below, we conclude that premise is incorrect, and that the factual basis of administrative rules, to the extent any is necessary,[4] must be developed in another context.

By way of background, the federal Administrative Procedures Act provides for two types of agency rulemaking. The more common type is called "informal" or "notice-and-comment" rulemaking and is governed by 5 USC § 553 (1970). All that is required is agency notice of intent to adopt a rule and an opportunity for interested persons to submit comments to the agency. Written comments must always be accepted by the agency. Whether there will be a speech-making type of hearing for receipt of oral comments is within the agency's discretion.

The other federal rulemaking procedure is called "formal" rulemaking and is governed by 5 USC §§ 557 and 558 (1970). Formal rulemaking involves all of the procedures used in what we know in Oregon as contested-case hearings: the right to present oral testimony, the right to cross-examine adverse witnesses and judicial review on a verbatim transcript of the proceedings.

■ Turning to the Oregon Administrative Procedures Act, it is apparent that the legislature had opted to provide only for informal rulemaking procedures. An agency first publishes notification of intent to adopt,

---

able." Some of the opinions state they are based on substantive due process grounds; the basis of others is not clear.

This court has previously indicated that it does not regard substantive due process as a viable legal doctrine. *Western Amusement v. Springfield,* 21 Or App 7, 14, n 4, 533 P2d 825 (1975), *aff'd on other grounds,* 274 Or 37, 545 P2d 592 (1976), citing Linde, *Without "Due Process," Unconstitutional Law in Oregon,* 49 Or L Rev 125 (1970). *See also Schlichting v. Bergstrom,* 13 Or App 562, 511 P2d 846 (1973), and Linde, *Due Process of Lawmaking,* 55 Neb L Rev 197 (1976).

[4] *See* note 2 and note 3, supra.

amend or repeal a rule. ORS 183.335(1), 183.335(2) and 183.335(6). Then:

> "When an agency proposed to adopt, amend or repeal a rule, it shall give interested persons reasonable opportunity to submit data or views. Opportunity for oral hearing shall be granted upon request received from 10 persons or from an association having not less than 10 members within 15 days after agency notice. The agency shall consider fully any written or oral submission." ORS 183.335(3).

Thus, the Oregon scheme, like the federal scheme, provides that there is always the opportunity for interested persons to submit written comments on proposed rules. But unlike the federal scheme, in some situations in Oregon a rulemaking hearing is mandatory.

The significance of the conclusion that Oregon's Administrative Procedures Act provides for only informal rulemaking is that it is universally recognized that in informal rulemaking an agency is not limited to consideration of only the record before it. "* * * The agency, in [informal] rule making, can look beyond the particular hearing record since it otherwise would be unable to draw upon its expertise." *Pacific Coast European Conference v. United States,* 350 F2d 197, 205 (9th Cir), *cert denied* 382 US 958 (1965); *see also* Shapiro, *The Choice of Rulemaking or Adjudication in the Development of Administrative Policy,* 78 Harv L Rev 921, 936-37 (1965); Robinson, *The Making of Administrative Policy: Another Look at Rulemaking and Adjudication and Administrative Procedure Reform,* 118 U Pa L Rev 485, 519, 525 (1970); Friendly, *"Some Kind of Hearing,"* 123 U Pa L Rev 1267 (1975); Verkuil, *Judicial Review of Informal Rulemaking,* 60 Va L Rev 185 (1974); Note, *Judicial Review of the Facts in Informal Rulemaking: A Proposed Standard,* 84 Yale L J 1750 (1975); Boyer, *Alternatives to Administrative Trial-Type Hearings for Resolving Complex Scientific, Economic, and Social Issues,* 71 Mich L Rev 111 (1972).

Stated differently:

> "* * * The notion of a decision based exclusively on the record is imported from adjudicatory procedures * * *; such a requirement does not account for the agency's policy and planning responsibilities * * *." Note, *The Judicial Role in Defining Procedural Requirements for Agency Rulemaking,* 87 Harv L Rev 782, 805 (1974).

In other words, in informal rulemaking an agency can proceed on the basis of data other than written or oral comments submitted by interested persons. An agency can properly rely upon data gathered from publications in its field, interviews, input from advisory committees, etc., or even information from informal social conversation.

This being the case, even if we had the record petitioners wish transmitted to this court, we would not necessarily be able to engage in the review process petitioners seek.

There are alternative manners which we need not here discuss by which petitioners can obtain such judicial review. Under either direct review of rules, ORS 183.400, or review of rules as part of our review in a contested case, ORS 183.482(8)(c), the substantive standard of review is the same—that spelled out in ORS 183.400. The important difference is that in the contested-case context we will have a record sufficient to apply those substantive standards, whereas in the direct-review context the record will not necessarily be sufficient given the reality that the agency rulemaking can be based on matters not of record.[5]

There are admittedly disadvantages to exposing parties to the delay, expense and risk of a contested-case proceeding. However, we conclude the greater

---

[5] Direct review of rules pursuant to ORS 183.400 remains possible, on a record like that now before us, for compliance with rulemaking procedures, for constitutionality other than substantive due process, and for being within the statutory authority of the agency when that determination can be made by a comparison of the statutes and the rules in question.

[ 327 ]

disadvantage to the public interest would be to force all rulemaking to be done with the formality of a trial, which we could only do by disregarding the legislative scheme that permits informal rulemaking based on any and all information that comes to an agency's attention from whatever source.

Motion denied.