569 P.2d 15 (1977)
30 Or.App. 863
WASCO COUNTY, Petitioner,
v.
AMERICAN FEDERATION OF STATE, County and Municipal Employees, Local No. 2752, a Labor Organization, and Employment Relations Board, State of Oregon, Respondents.
Court of Appeals of Oregon.
Argued and Submitted May 3, 1977.
Decided September 6, 1977.
On Petition for Attorneys Fees November 21, 1977.
Larry K. Amburgey, Portland, argued the cause for petitioner. With him on the brief were Bullard, Korshoj & Smith and Jim D. Korshoj, Portland.
Henry H. Drummonds, Eugene, argued the cause for respondent American Federation *16 of State, County and Municipal Employees, Local No. 2752, a labor organization. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.
No appearance for respondent Employment Relations Board, State of Oregon.
Before SCHWAB, C.J., and LEE and TANZER, JJ.
On Petition for Attorneys Fees November 21, 1977. See 571 P.2d 549.
TANZER, Judge.
Petitioner Wasco County seeks review of a cease and desist order of the Employment Relations Board (ERB) which sustained an unfair labor practice complaint and held that the County had violated its statutory duty "to bargain collectively in good faith."[1]
The County and Local 2752 of the American Federation of State, County and Municipal Employees were parties to a collective bargaining agreement which expired on June 11, 1975. In December of 1974, the Union contacted the County to begin negotiations on a successor contract. Thereafter, representatives of the parties met on several occasions, but negotiations were unsuccessful. When it became evident that the parties would be unable to reach an agreement by themselves, ERB assigned a mediator to facilitate the resolution of their differences.[2] On June 10, 1975, after participating in three negotiation sessions, the mediator concluded that the parties were deadlocked. The primary obstacle to agreement was the difference between the 26 percent wage increase sought by the Union and the 8 percent increase offered by the County. With the parties' assent, the mediator reported the deadlock to ERB on June 11, 1975. On the same day, the parties were formally notified that the fact-finding process had been initiated and that they would have five days in which to jointly select a fact finder.[3]
On June 13, 1975, the Union received a letter from the County expressing both its *17 disappointment that negotiations had been unsuccessful and its hope that "a way might be found to bring a peaceful and mutually satisfactory settlement." The letter also stated that the County was obligated to formulate a budget for the fiscal year beginning July 1, 1975,[4] and that, despite the absence of a labor contract, the County had decided to include in that budget an 8 percent wage increase; an amount previously offered to and rejected by the Union. The wage increase was to apply to all personnel in the bargaining unit and it was to become effective as of July 1, 1975.
The Union did not object to this modification of the wage scale until, on July 25, 1975, after the selection of a fact finder but before the commencement of the fact-finding hearing, it filed an unfair labor practice complaint. The complaint alleged that the County's unilateral implementation of its last wage offer was calculated to disrupt and stall negotiations and that by this action the County had refused to bargain in good faith.
Following a hearing, ERB concluded that the County's implementation of a wage increase prior to conclusion of the fact-finding process was per se an unfair labor practice. Accordingly, ERB ordered the County to "cease and desist from failing to bargain in good faith." However, ERB refused to direct a rollback of wages because to do so "would bring absurd results." ERB's disapproval of the above-described action by the County was based upon the following conclusions of law:
"* * * ORS 243.712 provides that when the parties do not reach agreement the Board shall assign a mediator. If the dispute is not resolved through mediation the parties jointly or individually may petition the Board to initiate factfinding or the Board may initiate factfinding. Factfinding was initiated in this case by the Board's State Conciliator. Throughout mediation and factfinding acts are in progress which might change the positions of the parties. ORS 243.722(3) provides that not more than five working days after the factfinder's findings and recommendations have been sent, the parties shall notify each other and the Board whether or not they accept the recommendations of the factfinder. If one or both of the parties notifies the Board that it does not accept the recommendations of the factfinder, at that point the parties are at impasse under Oregon public sector law.
"When an impasse is reached under the National Labor Relations Act certain unilateral circumscribed self-help action may be initiated by either of the parties. For example, the employer is free to make unilateral changes in working conditions consistent with his rejected offers to the union and the union is free to withhold services. This is not true under Oregon's public sector collective bargaining law.
"Oregon law gives public employes only a limited right to strike. They may strike only after they have been through mediation and factfinding, the factfinder's recommendations have been made public by the Board, thirty days have elapsed since the Board has made public the factfinder's findings and recommendations and the exclusive representative has given ten days notice of intent to strike. We must assume that the legislature intended that there be a balancing of the self-help measures available to the parties. Since the union cannot strike until it has been through the steps listed, it would follow that an employer could not initiate self-help measures until the steps listed had been completed. Thus, the employer could not make unilateral changes in working conditions consistent with the rejected offers to the union until the steps set out in ORS 243.712, 243.722 and 243.726(2) had been completed.
"For these reasons, we conclude that Wasco County committed an unfair labor practice within the meaning of ORS 243.672(1)(e) when it unilaterally implemented an 8 percent wage increase on July 1, 1975." (Emphasis supplied.)
*18 This court has consistently held that it tends to defer to expertise-based policy formulations by administrative agencies, absent evidence of a contrary legislative intent.[5] This rule of deference to agency expertise is particularly applicable to ERB because of the general nature of the statutes which it administers. For example, in Fairview Hospital v. Moore, 28 Or. App. 637, 560 P.2d 671 (1977), the question was what constitutes "misconduct" within the meaning of the Merit System Law, ORS 240.555(1); and in Sutherlin Ed. Assn. v. Sch. Dist., 25 Or. App. 85, 548 P.2d 204 (1976), and Springfield Ed. Assn. v. Sch. Dist., 24 Or. App. 751, 547 P.2d 647, 25 Or. App. 407, 549 P.2d 1141, rev. den. (1976), the question was what constitutes "conditions of employment" under the Public Employes' Collective Bargaining Law, ORS 243.650(7). In these cases we permitted ERB to flesh out amorphous statutory terms in a manner which, in ERB's judgment, would best effectuate the legislative purpose.
Resolution of this case depends upon the meaning given to the term "duty to bargain in good faith." The term is used throughout ORS chapter 243 but the legislature has not defined it.[6] Under these circumstances, ERB is free to define the term in the way which it rationally concludes would best advance the purposes of the Public Employes' Collective Bargaining Law. It could elect to do so either by promulgating rules of general application or by proceeding on a case-by-case basis to determine whether specified conduct constitutes a breach of that duty.
Thus, ERB might elect to adopt an absolute rule that a public employer's unilateral implementation of a wage increase prior to exhaustion of the fact-finding process is never a violation of the duty because it reflects a partial agreement and serves to narrow the issues of a labor dispute, cf. National Labor Rel. Bd. v. Bradley Washfountain Co., 192 F.2d 144 (7th Cir.1951). Conversely, ERB might conclude that collective bargaining is best advanced by an opposite rule freezing the preexhaustion situation. It may also adopt a middle approach barring partial compliance under certain conditions. In any event, if ERB rationally found, as a matter of policy, that the rule which it adopted advanced the purposes of the Public Employes' Collective Bargaining Law, we would tend to defer to it, absent evidence of contrary legislative intent. Sun Ray Dairy v. OLCC, 16 Or. App. 63, 517 P.2d 289 (1973).
Alternatively, ERB might conclude on a case-by-case fact analysis of the intent or effect of the employer's actions that a violation of the duty to bargain in good faith either was or was not established. If ERB proceeded in this manner, we would review its order for substantial reason in the expression of the relationship between the facts found and the achievement of the statutory purpose. McCann v. OLCC, 27 Or. App. 487, 556 P.2d 973 (1976), rev. den. (1977).
In this case, ERB elected to articulate a general rule. It found that an employer's preexhaustion partial implementation of the Union's demands is per se an unfair labor practice. Ordinarily, under the above reasoning, we would defer to that determination. However, ERB's order was not based upon a formulation of policy *19 within the agency's statutory delegation nor upon an application of that policy to specific facts. Rather, as we read the portion of the order set forth above, it was based upon ERB's conclusion as a matter of law that the legislature must have intended that such partial implementation be barred until after mediation and fact-finding and that ERB was bound by that legislative intent. Notwithstanding our deference to ERB's policy-making expertise, there is no reason to defer to the agency's interpretation of a statute's specific requirements. The task of divining legislative intent from the words of a statute is essentially judicial in nature. Therefore, whether ORS chapter 243 necessarily mandates the per se rule which ERB adopted in this case is a question of law.
ERB's conclusion that its rule is statutorily mandated is based upon two assumptions: that since the legislature expressly precluded employes from utilizing self-help (i.e., a strike) until exhaustion of the fact-finding process, it must have also intended to preclude employers from resorting to self-help; and that the partial implementation involved herein is a form of self-help which the legislature intended to foreclose. Both of these assumptions are fallacious. First, as a matter of statutory construction, it is more logical that explicit reference to the workers' right to strike and silence as to the employers' rights is no evidence whatever of a legislative desire for symmetry. Quite the contrary, one-sided statutory silence evidences a legislative policy delegation to the agency regarding employers' rights. Second, even if by barring preexhaustion strikes the legislature intended to similarly restrict employer self-help, it does not follow that preexhaustion partial implementation of union demands is such a forbidden practice. The management equivalent of a strike is a lockout, not a partial concession. See, American Ship Bldg. Co. v. NLRB, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). The same policy considerations which motivated the legislature to preclude preexhaustion strikes apply to preexhaustion lockouts, but they are not necessarily applicable to the partial granting of the union's demand as is involved here.
In sum, we conclude that ORS chapter 243 may permit, but does not require the result which ERB ordered. Therefore, ERB erred in concluding that the absolute rule which it formulated was statutorily mandated and the matter must be remanded for entry of a proper order. We do not hold that ERB is without authority to adopt the per se rule it adopted here. However, if it does so, the rule, if challenged in an appropriate proceeding, must be supported by reasons which relate to the purposes of the Public Employes' Collective Bargaining Law. Int'l Cncl Shopping Cntrs v. Env. Quality Comm., 27 Or. App. 321, 556 P.2d 138 rev. den. (1976).
Reversed and remanded.
NOTES
[1] The term "unfair labor practice" is defined in ORS 243.672(1) which provides in pertinent part:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:
"* * *
"(e) Refuse to bargain collectively in good faith with the exclusive [employe] representative."
[2] ORS 243.712(1) provides:

"If after a reasonable period of negotiation over the terms of an agreement * * * no agreement has been signed, either or both of the parties shall notify the board of the status of negotiations. Such notification shall contain a statement of each issue on which the public employer and the exclusive representative have failed to achieve an agreement through negotiation; or the board on its own motion may determine that the public employer and the exclusive representative have failed to achieve and [sic] agreement on a labor dispute through negotiations. Upon receipt of such notification the board shall assign a mediator upon request of either party or upon its own motion."
[3] ORS 243.712(2)(b) provides:

"Where the board on the request of one of the parties or on its own motion has determined that the parties have failed to achieve agreement through negotiation, the board shall render assistance to resolve the labor dispute according to the following schedule:
"* * *
"(b) If the labor dispute has not been settled after 15 days of mediation, the parties jointly or individually may petition the board in writing to initiate factfinding. In lieu of a petition, the board on its own motion may initiate such factfinding if it deems it appropriate and in the public interest."
ORS 243.722(3) provides:
"The factfinder shall establish dates and places of hearings. Upon the request of either party of the factfinder, the board shall issue subpenas. The factfinder may administer oaths and shall afford all parties full opportunity to examine and cross-examine all witnesses and to present any evidence pertinent to the dispute. Not more than 30 days from the date of conclusion of the hearings, the factfinder shall make written findings of fact and recommendations for resolution of the dispute and shall serve such findings and recommendations upon the parties and upon the board. * * * Not more than five working days after the findings and recommendations have been sent, the parties shall notify the board and each other whether or not they accept the recommendations of the factfinder. If the parties do not accept them, the board, five days after receiving notice that one or both of the parties do not accept the findings, shall publicize the factfinder's findings of facts and recommendations."
[4] See generally, Oregon Local Budget Law, ORS 294.305 et seq.
[5] Brusco Towboat v. State Land Bd., Or. App. 567 P.2d 1037 (1977); Bienz v. City of Dayton, 29 Or. App. 761, 566 P.2d 904 (1977); Smith v. Peet, 29 Or. App. 625, 564 P.2d 1083, 30 Or. App. 245, 567 P.2d 125 (1977); McCrae v. Wilson, 29 Or. App. 517, 564 P.2d 731 (1977); Merrill v. Public Welfare Div., 29 Or. App. 129, 562 P.2d 583 (1977).
[6] The legislature's only clue as to the meaning of "duty to bargain in good faith" is the general definition of "collective bargaining" which appears in ORS 243.650(4):

"`Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employes to meet at reasonable times and confer in good faith with respect to employment relations, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. However, this obligation does not compel either party to agree to a proposal or require the making of a concession."