TANZER, J.
This is a consolidated review of two related orders of the Employment Relations Board (ERB). The first order certified the Eugene Education Association (EEA) as the exclusive bargaining representative for substitute teachers employed by petitioner, Eugene School District No. 4-J (District).[1] The second order directed petitioner to cease and desist from refusing to bargain in good faith with the certified exclusive representative of the substitute teachers employed by the district. The challenges to the two orders raise similar contentions.
FACTS AND PROCEDURAL HISTORY
In July 1975 the Eugene Substitute Teachers Organization (ESTO) filed with ERB a petition requesting certification as the representative of all substitute teachers employed by the District. Respondent Eugene Education Association intervened, proposing the same bargaining unit. The District filed timely objections to both petitions.
On August 27,1976, after a hearing, ERB issued its order overruling the District’s objections, determining the appropriate bargaining unit to be substitute teachers on the District’s 1975-76 Master Substitute Teachers List, and ordering a representation election.[2]
*[1258] The results of the election, held on October 28, 1976, were: 51 votes for representation by EEA, 23 for ESTO, and 17 votes for no representation.
In December 1976 ERB dismissed the District’s objections to the conduct of the election and certified the EEA as the exclusive bargaining representative for the group of substitute teachers eligible to vote in the election.
In the meantime, the EEA filed an unfair labor practice complaint alleging that the District unlawfully refused to bargain in good faith with the exclusive representative. The District denied that its refusal constituted an unfair labor practice. ERB found the District in violation of ORS 243.672(l)(e), *[3] and ordered the District to cease and desist from refusing to bargain in good faith with the EEA.
I. PUBLIC EMPLOYES
Petitioner’s first contention challenges ERB’s conclusion that substitute teachers employed by the District are public employes under ORS 243.650(17), which provides:
" 'Public employe’ means an employe of a public employer but does not include elected officials, persons appointed to serve on boards or commissions or persons who are 'confidential employes’ or 'supervisory employes.’ ”
*[1259] ' ERB’s conclusion that substitute teachers, when employed by the district, a public employer, are public employes conforms to the definition of public employes in ORS 243.650(17).
Petitioner urges this court to read into the plain language of this statute an exception for those employes who do not have a "substantial and continuing relationship with a public employer,” a test derived from the decision of the New York Public Employe Relations Board in Matter of East Ramapo Central School Dist., 3 Lab L Rep (CCH), State Laws ¶ 49,999 B 49 (NY PERB 1973).
 This court tends to defer to interpretation by administrative agencies of the statutes which they have the duty of implementing, absent evidence of legislative intent to the contrary, and, in particular, we defer to reasoned application of ORS chapter 243 by ERB. Wasco County v. AFSCME, 30 Or App 863, 569 P2d 15 (1977); Springfield Ed. Assn v. Sch. Dist., 24 Or App 751, 547 P2d 647, 25 Or App 407, 549 P2d 1141 rev den (1976). There is no evidence of legislative intent which would cause us to require ERB to adopt the New York rule which is inconsistent with the statutory language.[4] ERB’s conclusion is supported by fact and law and we uphold it.
II. THE BARGAINING UNIT
Petitioner’s second contention challenges ERB’s conclusion that a bargaining unit composed of intermittently employed substitute teachers is appropriate for purposes of collective bargaining.
The contention is wrong. ORS 243.682(1) and OAR 115-13-025(2) set out the criteria to be considered by *[1260] ERB in determining the appropriateness of a bargaining unit, including "community of interest, wages, hours and other working conditions of the employes involved, the history of collective bargaining and the desires of the employes.”[5]
ERB found that all substitute teachers are paid at a uniform rate which differs from the full-time teachers’ rate, that they share similar working conditions with regular teachers, that the showings of interest indicated some desire for representation, and that a community of interest among substitutes was shown by their similarity of skills and duties, lack of employe benefits and absence of promotional ladders, common supervision and treatment as a group by the District administration. It also rejected unit deliniation based upon number of days employed as arbitrary and because the other factors are more significant indicators of community of interest. These findings provide a rational basis for ERB’s conclusion that substitute teachers constitute an appropriate bargaining unit.
m. SHOWING OF INTEREST
Petitioner challenges the timeliness of the showing of interest by ESTO because the signators of the showing of interest were from the substitute list of the school year previous to the 1975-76 list from which the unit was certified and voter eligibility was drawn. Petitioner also challenges the adequacy of EEA’s showing of interest because the working of the statement of interest signed by the substitutes did not conform exactly to statutory requirements.
We do not decide the merits of petitioner’s contentions because the adequacy issues have been mooted by the subsequent representation election.[6] The show *[1261] ing of interest is a preliminary indication of sufficient interest among employes to warrant holding an election. The representation election is the ultimate guide to employes’ wishes, and the election result supercedes and renders moot any issues as to the adequacy of the showing of interest.
IV. ELIGIBILITY OF VOTERS
Petitioner’s final contention concerns the eligibility of certain groups of persons to vote in the representation election.
There were 11 voters in the first group challenged by the District. If we assume that they all voted for the EE A and we further assume that all 11 challenges should have been allowed, there would be no change in the election result. In the absence of harm to petitioner, there is no ground for reversal. OAR 115-13-070(11).
Petitioner also argues that only those substitutes actually working for the District on election day should have been allowed to vote because substitute teachers are not employes of the District except on the particular days they are in school. ERB has determined otherwise, and we tend to defer to its reasoned application of the statute absent evidence of legislative intent to the contrary. Wasco County v. AFSCME, supra. Petitioner’s rule would allow the District, as employer, to control the result of the election by careful selection of substitute teachers called for work on election day. That result obviously would be contrary to the statutory purpose.
Affirmed.

 Petitioner also asks us to review ERB’s order dismissing its objections to the conduct of the representation election that preceded the certification order, but that is not a final order subject to review under ORS 183.480. Klamath Co. v. Laborers Inter. Union, 21 Or App 281, 534 P2d 1169 (1975).

The relevant portions of the order are:
"1. The appropriate bargaining unit is:
"Those substitute teachers whose names presently appear on the Master Substitute Teacher Lists of Eugene School District 4-J, limited to those who were in fact employed by the District as substitute teachers during the 1975-76 school year, or subsequent thereto; except those required to be excluded by law.
"2. The Executive Secretary shall cause a secret ballot election to be conducted to determine if the employes in the bargaining unit wish to be represented by the Eugene Substitute Teacher Organization; *[1258] The Eugene Education Association; or wish no representation for the purpose of collective bargaining.
"3. Employes eligible to vote in the election are members of the bargaining unit who were on the Master Substitute Teacher List as of the date of this Order who were employed by the District during or subsequent to the 1975-76 school year.”

 ORS 243.672(1) provides in part:
"It is an unfair labor practice for a public employer or its designated representative to do any of the following:
"(e) Refuse to bargain collectively in good faith with the exclusive representative.”

At least one other state has chosen ERB’s position rather than the New York position. In Board of School Directors of City of Milwaukee v. Wisconsin Employment Relations Commission, 63 CCH Lab Cas ¶ 52,337 (Wis Cir Ct 1970), a Wisconsin court approved the agency’s finding that substitute teachers were municipal employes under a statute similar to ORS 243.650(17).

 OES 243.682(1) and OAR 115-13-025(2) also provide that ERB may determine a unit to be an appropriate unit although some other unit might also be appropriate.

ERB’s position is that the adequacy of the showing of interest is an administrative determination not subject to challenge by the parties. OAR *[1261] 115-13-020. Such is the federal rule. U. S. Gypsum Co., 40 LRRM 1120 (NLRB 1957); Sheffield Corp., 34 LRRM 1034 (NLRB 1954).