Argued and submitted March 24, affirmed June 30, 1980

WASCO COUNTY,
*Petitioner,*

*v.*

AMERICAN FEDERATION OF
STATE, COUNTY AND MUNICIPAL
EMPLOYEES, LOCAL NO. 2752, et al,
*Respondents,*

(No. C-176-75, CA 15680)

613 P2d 1067

See also, 31 Or App 765, 571 P2d 549.

[859]

Linda K. Williams, Portland, argued the cause for petitioner. With her on the brief was Bullard, Korshoj & Smith, P.C., Portland.

Jennifer Friesen, Eugene, argued the cause for respondents American Federation of State, County and Municipal Employees, Local No. 2752, and Oregon Education Association. With her on the brief were Henry H. Drummonds and Kulongoski, Heid, Durham & Drummonds, Eugene.

No appearance by respondent Employment Relations Board.

Before Joseph, Presiding Judge and Warden and Warren, Judges.

WARDEN, J.

**WARDEN, J.**

Petitioner Wasco County again seeks review of an Employment Relations Board (Board) cease and desist order, issued upon the Board's finding that the County had committed an unfair labor practice against respondent American Federation of State, County and Municipal Employees, Local No. 2752 (AFSCME).[1] The proceeding was initiated on AFSCME's complaint, which alleged that the County, by unilaterally implementing its last proposed wage increase following the parties deadlock on the wage increase issue but before the conclusion of Board-sanctioned fact-finding, had "[r]efuse[d] to bargain collectively in good faith with the exclusive [employe] representative." ORS 243.672(1)(e).[2] The facts surrounding this controversy are set out in *Wasco I* (see n. 1) and will not be repeated here, as they do not illuminate the purely legal issue presented by the County. That issue is whether on remand the Board either violated this court's mandate in *Wasco I* or abused its discretion by deciding this case under its so-called "per se" rule, stated as follows in the Board's final order:

"* * *it is a 'per se' violation of the duty to bargain in good faith for an employer to make a unilateral change regarding a mandatory subject of bargaining while the employer has a duty to bargain.* * *"[3]

---

[1] The report of our first decision in this case is *Wasco County v. AFSCME,* 30 Or App 863, 569 P2d 15 (1977), hereafter *Wasco I.*

[2] "Unfair labor practices" are defined by ORS 243.672(1), which provides in pertinent part:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

* * * * *

"(e) Refuse to bargain collectively in good faith with the exclusive [employe] representative."

* * * * *

[3] Wages, of course, are a mandatory subject of bargaining, and both parties agree with the Board's conclusion that "* * *the duty to bargain in

The basis for petitioner's claim that the Board's adoption of the per se rule violates the *Wasco I* mandate is that the rule was "adopted" in the course of deciding this contested case, while notice and comment rule-making procedure prescribed by the Oregon Administrative Procedures Act (APA) in ORS ch 183 was the only course open under our *Wasco I* decision for the Board's adoption of such a rule.

We do not see in *Wasco I* the restriction that petitioner asserts. First, we noted that "[r]esolution of this case depends upon the meaning given to the term 'duty to bargain in good faith' [in ORS 243.672(1)(e), n.2]. 30 Or App at 869. We added:

\* \* \* \* \*

"The term is used throughout ORS chapter 243 but the legislature has not defined it. [footnote omit-

---

good faith continues through mediation, factfinding and the cooling-off period" prescribed by ORS 243.712 through 243.726.

The model for the Board's per se rule is that adopted by the National Labor Relations Board to enforce the duty "to bargain collectively" (defined in the National Labor Relations Act as "the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and *confer in good faith* with respect to wages, hours, and other terms and conditions of employment\* \* \*," 29 U.S.C. § 158(d) [emphasis supplied]) imposed by § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). The rationale of the rule was explained by the Supreme Court in *Labor Board v. Katz,* 369 US 736, 747, 825 S Ct 1107, 1114, 8 L Ed 2d 230 (1962):

\* \* \* \* \*

"\* \* \*the Board [i.e., the National Labor Relations Board] *is* authorized [emphasis in original] to order the cessation of behavior which is in effect a refusal to negotiate, or which directly obstructs or inhibits the actual process of discussion, or which reflects a cast of mind against reaching agreement. Unilateral action by an employer without prior discussion with the union does amount to a refusal to negotiate about the affected conditions of employment under negotiation, and must of necessity obstruct bargaining, contrary to the congressional policy. It will often disclose an unwillingness to agree with the union. It will rarely be justified by any reason of substance. It follows that the Board may hold such unilateral action to be an unfair labor practice in violation of § 8(a)(5), without also finding the employer guilty of overall subjective bad faith.\* \* \*"

ted.] Under these circumstances, ERB [i.e., the Board] is free to define the term in the way which it rationally concludes would best advance the purposes of the Public Employes' Collective Bargaining Law. It could elect to do so either by promulgating rules of general application or by proceeding on a case-by-case basis[4] to determine whether specified conduct constitutes a breach of that duty."

We thus indicated that the phrase "duty to bargain in good faith" is what the Supreme Court later described as "call[ing] for completing a [legislative] value judgment," *McPherson v. Employment Division,* 285 Or 541, 550, 591 P2d 1381 (1979), to which the Board could respond in one of three principal ways. The first mode of response is that urged by petitioner, adoption of the rule pursuant to the APA's provisions for legislative rule-making now found at ORS 183.325 to 183.410.[5] The second alternative for adopting the rule, the one the Board used on remand, was that implied by ORS 183.355(5):

"No rule of which a certified copy is required to be filed shall be valid or effective against any person or party until a certified copy is filed in accordance with this section. However, if an agency, in disposing of a contested case, announces in its decision the adoption of a general policy applicable to such case and subsequent cases of like nature the agency may rely upon such decision in disposition of later cases."[6]

---

[4] But see n. 7 post.

[5] See, e.g., *Marbet v. Portland Gen. Elect.,* 277 Or 447, 463-64, 561 P2d 154 (1977) for the view that commencement of contested case proceedings do not necessarily preclude rule-making procedures for the adoption of standards to be used therein.

[6] Though the statute speaks to "the adoption of a general policy," the "general policy" statement thus "announced" by the Board falls squarely within the definition of a "rule" at ORS 183.310(7), which so far as relevant here provides:

" 'Rule' means any agency directive, standard, regulation or *statement of general applicability* that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency.* * *" [emphasis supplied]

The third option authorized by *Wasco I* was Board determination of this case without necessarily promulgating either a legislative rule or a general policy or rule under ORS 183.355(5). As neither the first nor third option was pursued by the Board, we will not discuss them further, other than to note that the third option, case-by-case administrative adjudication under broad statutory standards like "good faith" without agency formulation of a more operational standard or definition, may have since been precluded by *Megdal v. Board of Dental Examiners,* 288 Or 293, 313-14, 315, 605 P2d 273 (1980).[7]

Petitioner challenges the adequacy of the factual basis for adoption of a per se rule in this contested case proceeding, relying on the following language in *Wasco I:*

> "Alternatively, ERB might conclude on a case-by-case fact analysis of the intent or effect of the

General policy statements within the meaning of ORS 183.355(5) were described as "rules" in *Marbet v. Portland Gen. Elect., supra,* n 5, 277 Or at 461, and in *Larsen v. Adult & Family Services Division,* 34 Or App 615, 620-21, 579 P2d 866 (1978), and the Board's rule in the instant case was certainly "promulgated" in the usual sense of that word upon publication of the Board's decision in the Public Employer Collective Bargaining Reporter. *See, American Federal of State, County and Municipal Employees, Local No. 2752 v. Wasco County,* 4 PECBR 2397 (ERB No. C-176-75, Aug. 1979)

[7] Though the context of *Megdal* was administrative regulation of licensed dentists, the following principles are amenable to a more general application:

> "* * *[W]hen a licensing statute contains both a broad standard of 'unprofessional conduct' that is not fully defined in the statute itself and also authority to make rules for the conduct of the regulated occupation, the legislative purpose is to provide for the further specification of the standard by *rules,* unless a different understanding is shown.* * *" 288 Or at 313-14, 605 P2d at 283 [emphasis supplied]

And again, 288 Or at 315, 605 P2d 284:

> "* * *[W]hen the statute itself offers no further definition, the legislative delegation to the agency calls for such questions [as the kinds of relationships and financial arrangements covered, etc.] to be resolved in principle *by rules* rather than being confronted and disputed for the first time in charging a particular respondent directly under a conclusory term such as 'unprofessional conduct.' "

[864]

employer's actions that a violation of the duty to bargain in good faith either was or was not established. If ERB proceeded in this manner, we would review its order for substantial reason in the expression of the relationship between the facts found and the achievement of the statutory purpose. *McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976), *rev den* (1977)."

In *Wasco I* we also stated:

"We do not hold that ERB is without authority to adopt the per se rule it adopted here. However, if it does so, the rule, if challenged in an appropriate proceeding, must be supported by reasons which relate to the purposes of the Public Employes' Collective Bargaining Law. *Int'l Cncl Shopping Cntrs v. Env. Quality Comm.,* 27 Or App 321, 556 P2d 138, *rev den* (1976)."

Petitioner does not dispute the finding of the Board that the County, over objection by AFSCME, increased wages, a mandatory subject for bargaining, before the dispute resolution procedures were fully completed. Petitioner contends that these facts did not constitute a breach of the duty to bargain in good faith. But as noted above, in light of *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979), defining that concept is within the province of the agency. *See Springfield Education Assn v. School District,* 42 Or App 93, 96, 600 P2d 425 (1979).

The Board here has met the mandate of *Wasco I* by supporting its rule with reasons which relate to the purposes of the Public Employes' Collective Bargaining Act. The Board's order recites those reasons, as follows:

"The PERA mandates mediation, factfinding and a 30-day cooling-off period;* * * In order to integrate the policies and purposes of the PERA with other provisions of the Act, this Board concludes that the duty to bargain in good faith continues through mediation, factfinding, and the cooling-off period. Mediation and factfinding are extensions of table bargaining intended to assist the parties in their effort to

reach a negotiated settlement. The cooling-off period is yet another continuation of the bargaining process which provides the parties with a final opportunity to reach agreement where a factfinder's recommendations have not been accepted.

"The County's action, implementation of its final wage offer after factfinding was initiated but before the exhaustion of the statutory dispute resolution procedures, was inconsistent with its duty to bargain in good faith."

Petitioner also contends that the Board has improperly applied the rule "retroactively" by using it to determine the case in which it was promulgated. The argument is precluded by our holding in *Larsen v. Adult & Family Services Division, supra,* 34 Or App at 621, 579 P2d 868, that a general rule announced in agency adjudication as provided in ORS 183.355(5) may be used "* * *to resolve the instant case and for application in subsequent similar situations."

Finally, petitioner cites textual and federal authorities for its argument that it was an abuse of discretion for the Board to adopt the challenged rule in a contested case rather than through legislative rulemaking. Granting that the latter is preferred to the former, see *Larsen v. Adult & Family Services Division, supra,* the fact remains that use of either is authorized by the Oregon APA. Failure to choose the preferred mode does not render the choice of the other mode wrong.

The order is affirmed.