Argued and submitted August 20, affirmed November 17, 1980,
reconsideration denied January 8,
petition for review denied March 17, 1981 (290 Or 651)

ARNOLD,
*Petitioner,*

*v.*

BOARD OF ACCOUNTANCY
OF THE STATE OF OREGON,
*Respondent.*

(CA 16742)

619 P2d 912

George Platt, Portland, argued the cause for petitioner. With him on the brief were Bouneff, Muller & Marshall, and John Chally, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner seeks judicial review of an order of the State Board of Accountancy (Board) permanently revoking his license as a public accountant. The Board's order was based on its conclusion that the petitioner's conduct as an accountant constituted dishonesty in the practice of public accounting. On appeal, petitioner does not challenge the Board's factual findings, but rather focuses his appeal on the lack of statutory or other standards defining "dishonest" behavior. Additionally, he claims that the Board's legal conclusion that he is guilty of "dishonesty" is not rationally connected to its findings of fact. We affirm.

### I

The petitioner was charged pursuant to ORS 673.170(2), which provides:

> "The board may revoke or suspend any certificate issued under ORS 673.040 to 673.080, or any registration or license granted under ORS 58.345 or 673.090 to 673.140 or section 16 or 20, chapter 381, Oregon Laws 1951, or may revoke, suspend or refuse to renew any permit issued under ORS 673.150, or may censure the holder of any such permit for any one or any combination of the following causes:
>
> "* * * * *
>
> "(2)  Dishonesty, fraud or gross negligence in the practice of public accounting."

The notice of proposed revocation alleged dishonesty or fraud or both on petitioner's part. It contained both general and specific counts, the latter referring to specific work done (or not done) for particular clients. The Board made detailed findings of fact paralleling each of the proven counts. Its ultimate findings are set out in the margin.[1] After making these findings, the Board issued an opinion and conclusion which we set out in full:

---

[1] "Ultimate Findings of Fact

"General Counts

"I. State of Washington Advertising - Licensee held himself [out] to the public as a licensed public accountant in the State of Washington when, in fact, he was not so licensed.

"The Board has before it a Licensee who has been in public practice over 25 years. As a member of the accounting profession, he should be expected to understand and comprehend the profession's standards and ethics, as well as commonly understood principles of human and client-accountant relationships. Instead, Licensee failed to understand the profession's standards and ethics in conducting an accounting practice or in dealings with clients. This Board in the past has attempted to educate Mr. Arnold regarding accountant liens, excessive fees, contracts, and non-productive work. He seems to listen, but

"II.  Retention of Client Records - Licensee's contractual provision claiming ownership of, and retaining possession of client records, is contrary to law and is in violation of the standards and ethics of the public accounting profession.

"Special Counts

"I.  Theresa Federholzner - The time generated by licensee are unreasonable, applying licensees own billing schedule of approximately $14.00 to $15.00 an hour, the resultant fee was unreasonable.

"II.  Wax-Wing Cedar Products, Inc. (W. J. Browne) - Licensee's work product has no rational relationship to the engagement.

"A licensee who performs work not contracted for and attempts to collect fees for such work breaches the trust and confidence placed with him by clients.

"III.  Syndicated Investments Associates (W. Stevenson Browne) - A licensee who attempts to charge fees for work not authorized to be performed demonstrates a lack of basic honesty and fair dealing.

"IV.  Russell Lunning - Lunning Nursery - A licensee who attempts to charge fees for work not authorized to be performed demonstrates a lack of basic honesty and fair dealing.

"V.  The Lesslers - Licensee's fee and time alleged to have been generated to justify the fee are unreasonable, excessive and with no rational relationship to fees customarily charged for such work. Further, client was billed for services not contracted for and which have no relationship to the engagement. Client did not receive any work product.

"VI.  Robert Sudlow - Far West Marketing, Inc. - Licensee's fee is unreasonable, excessive and with no relationship to fees customarily charged for such work. Licensee failed to deliver part of the work product contracted for. Licensee created duress for client by waiting until a deadline was reached to file returns and requiring documents to be signed acknowledging the accuracy of this prior to releasing the returns.

"VII.  Thomas Pestner - Licensee's fee and time generated for this return are unreasonable, excessive and with no relationship to fees customarily charged for such work. Licensee failed to prepare a return but charged fees for a return."

"Several distinct patterns emerge from the testimony presented to the Board. One, is exorbitant fees for normal routine accounting work. Two, is billing charges for accounting work not contracted for or within the scope of engagement. Three, billing for work in 'progress' but in fact without any work product ever being delivered to the client. Finally, withholding work product, in conjunction with a "lien", at or near tax deadlines in order to receive fees or acknowledgment work is correctly prepared.

"Overriding these patterns is a lack of understanding of clients' needs and a failure to communicate with a client regarding fees and work to be performed. Basically, Mr. Arnold appears to conduct a time record fee practice with the intent of generating large fees, in return for limited or no work product, rather than practicing accounting and serving the public. The client was caught between fee agreements, tax deadlines and pressure on one hand and the need for depending upon a professional on the other hand. The result was a disregard for basic human values.

"In reaching these conclusions the Board has heard a vast amount of testimony, studied over 400 pages of transcript, considered literally hundreds of records and exhibits and further considered counsels' legal memorandums. This decision did not come lightly.

### "CONCLUSION OF LAW

"Licensee's conduct constitutes dishonesty in the practice of public accounting and is a violation of ORS 673.170(2)."

The phrase "dishonesty in practice of public accounting" is not defined in ORS ch 673. Neither has the phrase been defined by the Board anywhere in its regulations, although the term "practice of public accountancy" is defined.[2] The Board's final order also fails to offer a description of what it considers to be encompassed within the former phrase.

Petitioner argues, on the basis of *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980) that the Board is obligated to set standards in the form of prior

---

[2] *See,* Oregon Administrative Rules, ch 801, Division 1 - Board of Accountancy.

rules before labeling certain behavior "dishonesty in the practice of public accounting." Alternatively, he argues that, at the very least, the Board must issue standards in the course of the contested case proceeding. It is the Board's position that the statute itself establishes a standard of conduct, and that the Board may flesh out the particulars through interpretive rulings.

As we view it, this case involves an application of both the Oregon Supreme Court's decision in *Megdal v. Board of Dental Examiners, supra,* and its decision in *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979). In *Megdal,* the court examined the phrase "unprofessional conduct," as that term is used in ORS 679.140 as a ground for revocation of a dental license. The court stated that the statutory standard could be intended in one of three ways: first, it might refer to norms of conduct uniformly or widely recognized in the particular profession. This would require a determination on the Board's part as to what the existing standards in fact are. Secondly, the phrase might express the legislature's own licensing standard, although in general terms, and the agency would proceed by interpretive rulemaking. Lastly, the term might represent a legislative direction to the agency to make new rules. *Megdal v. Board of Dental Examiners, supra,* 288 Or at 304-305. The court rejected the first two possibilities in the case before it, and concluded that the regulating board was obligated to issue prior rules as standards before finding the behavior under discussion in that case to be "unprofessional conduct." The court reasoned as follows:

"Rather, we infer from statutes such as those cited above that when a licensing statute contains both a broad standard of 'unprofessional conduct' that is not fully defined in the statute itself and also authority to make rules for the conduct of the regulated occupation, the legislative purpose is to provide for the further specification of the standard by rules, unless a different understanding is shown." *Id.,* at 313-314.

In *McPherson v. Employment Division, supra,* the court distinguished between two types of terms used in the unemployment compensation statute, *viz.,* those that the courts have the primary responsibility to interpret and

define, and those whose definitions and interpretation are the agency's responsibility. In the first category are terms which refer "to relationships that meet certain definable legal tests." *Id.,* at 550. In the latter are those terms which call "for completing a value judgment that the legislature itself has only indicated," and technical terms dependent upon agency expertise. *Id.,* at 549-550. The court in *McPherson* did not indicate whether a term which it is the agency's responsibility to define must always be defined by prior rule-making, or whether the agency may proceed on a purely *ad hoc* basis.

We think that the proper approach in cases such as this, where it is argued that an agency is required to interpret or explain a particular statutory standard in prior rules, is to determine, first, if the phrase in question is for the courts or the agency to define and, second, assuming the term is found to be one for agency definition, whether the agency is obligated to make prior rules or whether it may proceed in some other way. This necessitates an examination both of the term involved and the conduct charged.

■ *McPherson* teaches us what types of terms are to be defined by the regulating agency. As noted, they are technical terms and terms which call for the completion of a value judgment. It is not a reviewing court's role to define such terms in the first instance; rather, its role is limited to determining whether the agency's elaboration of the legislative standard is within the range of its responsibility as set by the legislature. *McPherson v. Employment Division, supra,* 285 Or at 550. The phrase "dishonesty in the practice of public accounting" is just such a term. Like standards such as "fair," "unfair," "undue," "unreasonable" or "good cause," the phrase in question here "calls for completing a value judgment that the legislature itself has only indicated." *Ibid.* It is not, contrary to the Board's contention, a term which is subject to certain definable legal tests. While this court may be able to generally define the term "dishonesty," what is "dishonesty in the practice of public accounting" may or may not be readily apparent. It is a judgment for the Board to make.

We turn now to the second issue, *i.e.,* whether the Board must issue prior rules defining the phrase in question. In *Megdal,* the court concluded that prior rules are required where there is a broad standard of conduct that has not been fully defined by the legislature, where the agency has the authority to make rules, and where there is no legislative indication to the contrary. *Megdal v. Board of Dental Examiners, supra,* 288 Or at 313-314. In the present case, the Board of Accountancy has the power to make rules regulating the behavior of its member accountants, and has been directed by the legislature to do so.[3] However, the statutory standard, "dishonesty in the practice of public accounting," does not refer to a broad standard of conduct like the term "unprofessional conduct." "Dishonesty in the practice of public accounting" prohibits a particular type of conduct, *viz., dishonest* conduct. "Dishonesty," unlike the phrase "unprofessional conduct," is itself an expression of a legislative standard. As we interpret *Megdal,* the Board is not obligated further to define this word by prior rules, but may proceed to utilize it on a case by case basis through interpretive rulings. *Id.,* at 304, 308. *See also Wasco County v. AFSCME,* 46 Or App 859, 863, 613 P2d 1067 (1980).

Petitioner appears to argue that our decision in *Oliver v. Employment Division,* 40 Or App 487, 493, 595 P2d 1252 (1979), is *contra.* In *Oliver,* this court concluded that, where a particular statutory term is found to be one for agency definition under *McPherson,* the agency, at least in the case of the Employment Division, must adopt formal rules before applying that term; it cannot take a purely *ad hoc* approach. As a result of *Oliver,* a statutory term which does not require prior agency rule-making under *Megdal*

---

[3] In fact, as the court in *Megdal* noted, the Board of Accountancy is authorized to adopt a Code of Professional Conduct. These are specific standards which constitute grounds for disciplining accountants. *See* ORS 673.170(4); OAR 801-30-000 through 801-30-020. This is a separate method and basis of license suspension or revocation.

In this case, some of the petitioner's conduct violated these specific rules. *See* OAR 801-30-015, Rule 302 (records) and OAR 801-30-020, Rule 403 (advertising). Further, in one instance petitioner's behavior violated a statutory standard. *See* ORS 673.380 (records). There is no reason why such conduct may not also be considered "dishonesty in the practice of public accounting" even though the petitioner could have been disciplined under another section of the statute.

may, under this court's application of *McPherson,* nevertheless require such rules before it may be applied to a given situation. However, the decision in *Oliver* was based, in part, on the particular and peculiar multi-level structure of the unemployment compensation system law and, in part, on this court's reading of *Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977).[4]

We conclude that the Board in the present case is not obligated to issue prior standards beyond those already existing. The present case, in contrast to *Oliver,* involves the single-level application of a legislative term, "dishonesty," which is subject to a dictionary definition.[5] And, as we have noted, the phrase "practice of public accountancy" is defined in the Board's regulations.[6] What is *dishonesty* in the practice of public accounting will then, in most instances, be self evident. In this case, some of petitioner's conduct, such as billing clients for work not performed or requested, is clearly dishonest.[7] Where the petitioner's behavior is not clearly dishonesty in the practice of accounting, it is otherwise prohibited by statute or a specific rule save for one instance which is further discussed below.[8]

---

[4] In *Oliver, supra,* 40 Or App at 493, this court read *Marbet v. Portland Gen. Elect.,* as suggesting that it would be a violation of the Administrative Procedures Act for an agency to take a purely *ad hoc* approach to articulating policy.

[5] Webster's Third New International Dictionary defines dishonest as

"1 obs a: Dishonorable, Shameful b: Indecent, Unchaste, Lewd c: Disfigured, Repulsive, Unseemly 2: Characterized by lack of truth, honest, probity, or trustworthiness or by an inclination to mislead, lie, cheat, or defraud: Fradulent."

[6] OAR 801-30-000(7) provides:

"(7) 'Practice of public accountancy.' Offering to perform or performing, for a client or potential client, one or more types of services involving the use of accounting or auditing skills, or one or more types of management advisory or consulting services, or the preparation of tax returns or the furnishing of advice on tax matters, while holding oneself out in such manner as to state or imply that one is a licensee."

[7] The conduct charged apparently remains a relevant consideration in *Megdal v. Board of Dental Examiners, supra,* the court distinguished two prior opinions, *Board of Medical Examiners v. Mintz,* 233 or 441, 378 P2d 945 (1963) and *Ward v. Ore. State Bd. of Nursing,* 266 Or 128, 510 P2d 554 (1973), on the basis that the conduct in those cases was clearly unprofessional.

[8] *See* Ultimate Findings-General Counts, n 1, *supra,* and n 3, *supra.*

The result which we reach in this case is limited to the facts before us. The phrase in question is at least partially defined and the conduct charged is either clearly dishonest, explicably dishonest, or prohibited by the Board's Code of Professional Conduct. We do not attempt to fully articulate the relationship between this court's opinion in *Oliver* and the Supreme Court's decision in *Megdal.* We simply note that *Oliver* does not extend to all cases in which a value judgment on the agency's part is called for.

## II

■ Petitioner's next contention is that, assuming that the Board can determine what is "dishonesty in the practice of public accounting" on a case by case basis, its legal conclusion in this case is not rationally related to its findings of fact. *See McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976), *rev den* 277 Or 99 (1977); *Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973). We disagree.

We have already discussed the fact that petitioner's conduct was, for the most part, either clearly dishonest or specifically prohibited by rule. It is not obvious how charging unreasonable fees fits within either of these categories. It is also not clear why conduct such as retention of client's records, which is specifically prohibited by the Code of Professional Conduct, is "dishonest." The Board's opinion, however, supplies the necessary connection. The Board discusses petitioner's specific practices which, in its view, portray an accountant who, in an attempt to generate large fees, is engaged in a general course of deception and who demonstrates a lack of fair dealing with his clients. The petitioner had apparently received specific prior warnings concerning those activities. Under these circumstances, we cannot say that labelling this conduct, when taken in its entirety, as "dishonesty in the practice of public accounting" is beyond the Board's power to implement the legislative standard. *See McPherson v. Employment Division, supra,* 285 Or at 550. The Board's conclusion is supported by its factual findings, which findings are unchallenged by the petitioner.

Affirmed.