*[1311]
 
 TANZER, J.
 

 This case involves the City of North Bend’s proposal to fill 32 acres of the Coos Bay Estuary for the purpose of extending a runway at the North Bend Airport. The City applied to the Division of State Lands for a fill permit pursuant to ORS 541.605 to 541.665. After the Division announced its approval of the application on April 27, 1976, petitioners, as persons adversely affected by the proposed permit, requested a contested case hearing on the matter.
 
 [1]
 
 After a hearing, the director of the Division of State Lands issued an order which essentially affirmed, with conditions, the decision to issue the fill permit.
 
 [2]
 
 Petitioners seek review of that order.
 

 The public has a paramount interest in the maintenance of waterways for navigation, fishery and recreational uses and the state has the responsibility to
 
 *[1312]
 
 protect that interest.
 
 Brusco Towboat v. State Land Bd.,
 
 30 Or App 509, 569 P2d 1037, 31 Or App 491, 570 P2d 996
 
 rev pending
 
 (1977). To this end, the legislature has provided for the regulation of landfill and removal projects on Oregon’s submerged and submersible lands. ORS 541.605 to 541.665. Regulatory authority in this area has been conferred upon the director of the Division of State Lands in order to provide centralized protection of the public’s interest in preserving water resources. ORS 541.610(1).
 
 [3]
 

 Subject to legislative guidelines, the director is authorized to issue permits for landfill projects. The legislative standards relating to the exercise of this authority are contained in ORS 541.625(2), which provides:
 

 "The Director of the Division of State Lands may issue a permit applied for under ORS 541.620 for filling waters of this state. In determining whether or not a permit shall be issued, the director shall consider the following:
 

 "(a) Whether the proposed fill unreasonably interferes with the paramount policy of this state to preserve the use of its waters for navigation, fishing and public recreation;
 

 
 *[1313]
 
 "(b) Whether the proposed fill conforms to sound policies of conservation and would not interfere with public health and safety;
 

 "(c) Whether the proposed fill is in conformance with existing public uses of the waters; and
 

 "(d) Whether the proposed fill is consistent with a duly enacted zoning or land use plan for the area where the proposed fill is to take place.”
 

 To assist in the implementation and observation of these criteria, the Division of State Lands has promulgated rules relating to what must be shown by applicants for fill and removal permits in order to establish their eligibility. OAR 141-85-205(6) provides:
 

 "Applicants for fill projects
 
 must show that the land to be created will be used for a water-related activity
 
 * * *.” (Emphasis supplied.)
 

 The plain meaning of this requirement is that landfill projects are permissible only if they are to be used for water-related purposes.
 
 [4]
 
 Such a rule is consistent with and in furtherance of the legislative directive that landfill projects may not "unreasonably interfere” with the preservation of waters for navigation, fishery and recreational use. ORS 541.625(2)(a). Indeed, the legislative criteria upon which the rule is based may themselves be reasonably interpreted to require that all permitted landfill projects be for water-related or water-dependent uses. In view of the statutory expression of the paramount nature of the public’s interest in the maintenance of water resources, it may be that any diminution of those resources which is not necessary or incident to their beneficial utilization would be statutorily proscribed.
 

 
 *[1314]
 
 Resolution of this case does not, however, require us to so construe ORS 541.625(2)(a). By rule, the Division requires that landfill projects be water related. OAR 141-85-205(6). The division is required to follow its own rules.
 
 Fadeley v. Ethics Comm.,
 
 30 Or App 795, 568 P2d 687 (1977);
 
 Moore v. OSP,
 
 16 Or App 536, 519 P2d 389 (1974);
 
 Williams v. Joyce, 4 Or
 
 App 482, 479 P2d 513, 40 ALR3d 1272
 
 rev den
 
 (1971). The parties agree that the proposed runway extension is not a water-related project. Accordingly, the director erred in approving the issuance of the fill permit.
 

 Reversed.
 

 [1]
 

 OHS 541.627 provides:
 

 "Any person aggrieved or adversely affected by the director’s grant of a permit may file a written request for hearing with the director. If the director finds that the person making the written request has a legally protected interest which is adversely affected by the grant of the permit, the director shall set the matter down for hearing within 30 days after receipt of the request. The hearing shall be conducted as a contested case in accordance with OES 183.415 to 183.470. The permittee shall be a party to the proceeding. Within 45 days of the hearing the director shall enter an order containing findings of fact and conclusions of law. The order shall rescind, affirm or modify the director’s original order. Appeals from the director’s final order may be taken to the Court of Appeals in the manner provided by subsection (2) of OES 183.480. A permit to fill granted by the director may be suspended by the director during pendency of the proceedings before the director and any appeal. The director shall not suspend the permit unless the person aggrieved or adversely affected by the grant of permit makes a showing before the director by clear and convincing evidence that commencement or continuation of the fill would cause irremediable damage and would be inconsistent with OES 541.605 to 541.665.”
 

 [2]
 

 The director’s order approved the issuance of Fill Permit No. 2212 (Eevised) to the City of North Bend. The permit authorizes the City to undertake the proposed fill but requires it to mitigate the loss of resources caused thereby through corresponding projects, approved by the director, which are designed to restore tidal influence to an area equal in size to the submerged and submersible lands being filled. Neither the landfill nor the mitigation projects have been commenced.
 

 [3]
 

 OBS 541.610(1) provides:
 

 "The protection, conservation and best use of the water resources of this state are matters of the utmost public concern. Streams, lakes and other bodies of water in this state, including not only water and materials for domestic, agricultural and industrial use but also habitats and spawning areas for game and food fish, avenues for transportation and sites for public recreation, are vital to the economy and well-being of this state and its people. Unregulated removal of material from the beds and banks of the waters of this state may create hazards to the health, safety and welfare of the people of this state. Unregulated filling in the waters of this state may result in interfering with or injuring public navigation, fishery and recreational uses of the waters. In order to provide for the best possible use of the water resources of this state, it is desirable to centralize authority in the Director of the Division of State Lands, and implement control of the removal of material from the beds and banks or filling of the waters of this state.”
 

 An identical statement of policy is contained in rules of the Division of State Lands. OAR 141-85-103(1).
 

 [4]
 

 The Division of State Lands contends that OAR 141-85-205(6) does not require that landfill projects be water related but rather requires only that applicants indicate whether or not the proposed project is water related. In support of this strained construction, the Division points out that landfill permits have, in the past, been issued for nonwater-related projects. If the language of the rule were ambiguous, we would tend to defer to the Division’s interpretation of it. However, here there is no ambiguity. Prior acts by the Division in violation of its rule are irrelevant.