Argued April 20, affirmed May 30, 1978

LARSEN, *Petitioner,*

*v.*

ADULT & FAMILY SERVICES DIVISION,
*Respondent.*

(No. G1-11/01-HEU 276-8, CA 9412)

579 P2d 866

Roberta J. Lindberg, Lane County Legal Aid Service, Inc., Eugene, argued the cause and filed the brief for petitioner.

Al J. Laue, Solicitor General, Salem, argued the cause for respondent. With him on the brief was James A. Redden, Attorney General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

BUTTLER, J.

[ 615 ]

## BUTTLER, J.

Petitioner seeks judicial review of an order of respondent Adult & Family Services (AFS) issued in a contested case pursuant to ORS 183.470, which order requires petitioner, as a condition of receiving further medical assistance, to make a repayment of $19 per month to respondent because of the latter's overpayment of public assistance funds which occurred because petitioner understated her income in applying for the benefits. We affirm.

Petitioner, whose only income sources are social security and veterans' benefits, has been receiving a specialized form of general assistance under the General Assistance Medical Only program since 1975. The broad outlines of the program are encapsulated in Oregon Administrative Rules (OAR), ch 461, § 5-922, which provides:

> "*Treatment of Income in GA Medical Only Cases.* Income will be used to meet maintenance needs at general assistance standards. Excess income shall be used to meet the cost of medical care. Before payment for medical care is prior authorized by the public welfare branch office, the recipient's excess income will be accounted for by:
>
> "(1) depositing the excess income in a Trust and Agency account; or
>
> "(2) verifying through receipts or other means that the excess income for the current month plus the immediately preceding month has been spent for medical care."

Petitioner was depositing her "excess income" pursuant to OAR 461-5-922(1), but erroneously computed her excess income, resulting in her depositing less money in the Trust and Agency account than she should have deposited. The error caused AFS to expend approximately $1330 more of its assistance funds for petitioner's medical services than would have been the case if petitioner had been correctly depositing her excess income. Accordingly, AFS is seeking to recover the overpayment of $1330 from

petitioner. The amount of overpayment is not in dispute, but petitioner claims there is no existing regulation authorizing the agency to require her to make repayment as a condition of her receiving medical assistance.

The only rule AFS has promulgated for the recovery of overpayments is OAR 461-07-270:

"*Recovery of Overpayments.* The Public Welfare Division shall recover from an applicant or recipient the amount of any overpayment as defined in 461-07-250.

"(a) *In OAA, AB, and AD cases,* recovery may be made by reimbursement by the recipient, from cash available resulting from the overpayment, or from cash resources; *by reduction of future assistance payments by an amount not to exceed 10% of requirements at current payment levels* or by deduction of any income disregard (see section 461-07-065(3) for reduction of grant in congregate care cases).

"(b) In ADC and GA cases, if the overpayment is due to administrative error as defined in Rule 461-07-065, recovery shall be limited to cash available as a result of the overpayment and allowable liquid assets as defined in Rules 461-04-090—461-04-134. Recovery must also be made by disallowing that portion of the earnings disregard over $30 in ADC cases.

"(c) *In ADC and GA cases,* if the overpayment is due to the A/R's failure to notify the Branch Office of the receipt or possession of resources as required by section 461-03-055 of these rules, the PWD shall recover the full amount of the overpayment by reimbursement from cash available resulting from the overpayment and allowable liquid assets as defined in sections 461-04-090—461-04-135 of these rules; *by reduction of future assistance payments by an amount not to exceed 10% of requirements at current payment levels* (with the exception of ADC grants); and/or by deduction of any income disregarded except that the ADC recipient is allowed to retain the first $30 of the earnings disregard. (See section 461-07-065 (3) for reduction of grant in congregate care cases.)

[ 618 ]

"An overpayment may be recovered from an ADC grant by reduction of the assistance payment only on a voluntary basis.

"(d) If there is evidence that the recipient is incompetent, recovery will be handled as an administrative error overpayment." (Emphasis added.)

Because the medical assistance petitioner was receiving is part of the general assistance (GA) program, subsection (c) would be the provision of the regulation applicable to this case but for the fact that no payments are made by AFS to petitioner; rather, the payments are made to those who provided medical services to petitioner.

The issue presented is whether AFS may validly require petitioner to pay, in addition to her excess income, 10% of her determined level of need (requirements) in order to reimburse AFS the amount of the overpayment. Under OAR 461-07-270, it is clear that AFS could, in those situations in which it makes assistance payments directly to the recipient, withhold 10% of requirements in order to repay the overpayment.[1] Petitioner argues, however, that because the rule would only apply if AFS made the assistance payments directly to her, it does not authorize AFS to require her to make additional payments to the agency.

We have emphasized on several occasions the importance of the promulgation of administrative rules to guide the decisional processes of agencies.[2] The quoted regulation clearly sets forth a policy that overpayments shall be recovered by AFS by a reduction in benefits "by an amount not to exceed 10% of requirements." While the mechanics set forth in the regulations contemplate a reduction in payments, the

---

[1] ORS 411.620 authorizes AFS to maintain a civil action to recover an amount of assistance to which the recipient is not entitled, together with interest and costs.

[2] *See, e.g., Pyle v. Brooks,* 31 Or App 479, 570 P2d 990 (1977); *Morse v. Division of State Lands,* 31 Or App 1309, 572 P2d 1075 (1977), *rev den* 281 Or 431 (1978); *Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973).

stated policy with respect to reimbursement of over-payments is sufficiently clear that it is adequate as a guide to an agency decision in this contested case which does not involve direct payments, unless the agency is precluded from refining its regulations by adjudication in a contested case. The Supreme Court has recently noted that the failure of an agency to foresee every ramification of a validly adopted policy and to protect against those potential problems with a specific rule does not disable the agency from taking action.

> "* * * In principle, rulemaking procedure is to be used in stating general agency policy, ORS 183.310(7). 'Contested case' procedure is to be used in applying statutory or agency policy to specific parties on particular facts. ORS 183.310(2). When the decision of a concrete case presupposes agency adoption of general standards under which it is to be decided, those standards normally must be adopted by rulemaking procedure before they can be applied in the case. *However, the APA also recognizes that a general rule will sometimes be stated in explaining a particular decision by an agency, just as by a court.* Thus ORS 183.355(5) provides that 'if an agency, in disposing of a contested case, announces in its decision the adoption of a general policy applicable to such case and subsequent cases of like nature the agency may rely upon such decision in disposition of later cases.' " *Marbet v. Portland Gen. Elect.,* 277 Or 447, 461, 561 P2d 154 (1977). (Emphasis added.)

We do not believe that administrative agencies should be hobbled by an inflexible requirement that every refinement of an articulated policy be promulgated through the rulemaking machinery of the Administrative Procedures Act (ORS ch 183). As the United States Supreme Court has noted with respect to this issue:

> " "* * * The function of filling in the interstices of the [Securities] Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future. But any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing with many of

the specialized problems which arise. . . .' " *NLRB v. Bell Aerospace Co.*, 416 US 267, 292-93, 94 S Ct 1757, 40 L Ed 2d 134 (1974), *citing Securities Comm'n v. Chenery Corp.*, 332 US 194, 202, 67 S Ct 1575, 91 L Ed 1995 (1947).

■■ The question then arises, given the preference for legislative rulemaking under ORS 183.335 through 183.355, *when* is the adjudicative process a legitimate alternative? Little guidance is provided by either *Marbet v. Portland Gen. Elect., supra,* or this court's previous decisions. While it is not appropriate for an administrative agency to render an unguided, standardless adjudication in the name of developing guides and standards, where, as here, there are validly promulgated rules, which set forth a clear policy which is sufficiently analogous to the case at bar to provide guides and standards, an adjudication in the nature of a refinement thereof is not only permissible, but is desirable, to establish a rule to resolve the instant case and for application in subsequent similar situations.

We hold, accordingly, that the policy of requiring recipients of medical assistance under the General Assistance Medical Only program to pay 10% of "requirements," in addition to the income in excess of requirements, as a method of repaying an overpayment is a valid refinement of an articulated policy adopted through an adjudicative process complying with ORS 183.355(5).

Affirmed.