PETERS, *Petitioner,*
*v.*
ADULT AND FAMILY SERVICES
DIVISION, *Respondent.*
(No. 4-2402-KVV925, CA 11312)

588 P2d 103

James W. Nass, Marion-Polk Legal Aid Service, Inc., Salem, argued the cause and filed the brief for petitioner.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Petitioner appeals from an adverse determination of the Adult and Family Services Division (AFS) in which he was ordered to refund an overpayment. In order to recover, AFS has suspended certain assistance awards. The facts are not disputed, and we adopt the statement contained in petitioner's brief:

"At some point in 1976, Petitioner applied for Supplemental Security Income (SSI). In August, 1976, Petitioner applied for General Assistance [GA], and received a monthly GA grant from August, 1976, through February, 1977, receiving a total of $1235 in GA funds. In March, 1977, Petitioner was declared eligible for SSI effective September, 1976. The declaration of SSI eligibility resulted in receipt by Petitioner of a lump sum retroactive award of $1130. * * *

"As a condition of receiving GA, Petitioner signed an Interim Assistance Agreement which provided that in the event Petitioner subsequently received a retroactive award of SSI benefits covering a period of time for which he also received GA, Petitioner would reimburse Respondent from the retroactive award an amount equal to the GA received during that period. * * * When Petitioner received his lump sum retroactive SSI award of $1130 in March, 1977, he failed to reimburse AFS. Petitioner began spending the money and by March 30th, he had spent all but $700.00 of the award. * * *

"On March 25, 1977, Petitioner applied for an OSIP grant.[1] * * * Petitioner was notified that his OSIP

---

[1] Oregon Supplemental Income Payment (OSIP) grants are designed to supplement Supplemental Security Income (SSI) grants from the federal government. SSI has totally replaced state programs formerly providing aid to aged, blind and disabled. The "Forward" to AFS' Manual describes the interrelationship of the program as follows:

"The purpose of the Oregon Supplemental Income Program (OSIP) is to provide a monthly supplement to the federal Supplemental Security Income (SSI) program. The SSI program replaced the federal portion of the state administered Old Age Assistance (OAA), Aid the the Disabled (AD) and Aid to the Blind (AB) programs effective January 1, 1974. SSI payments are lower than the OAA, AD, and AB payments they replaced. The OSIP payment supplements SSI payments up to the level that existed in the state administered programs in December 1973. OSIP will retain the same program designations of OAA, AD, and AB. SSI categorized their applicants as aged, blind, or disabled."

grant would be reduced $12 to recoup the overpayment arising from his failure to reimburse AFS. * * * On July 12, 1977, a hearing was held before the Hearings Unit of AFS to decide the issue whether the overpayment arising from Petitioner's failure to reimburse AFS was client caused or should be attributed due [sic] to administrative error. * * * The Hearing Officer in that proceeding found that Petitioner had a history of medically diagnosed paranoid schizophrenia and concluded that there was sufficient medical evidence from which he could infer that Petitioner was unable to comprehend the nature and importance of the various documents he signed, and therefore was not responsible for the overpayment. The Hearing Officer ordered that the overpayment be deemed an administrative overpayment and handled as such. * * *

"On February 13, 1978, another hearing was held before the AFS Hearings Unit wherein the issue was whether the overpayment, notwithstanding its designation as due to administrative error, could be recouped by elimination of Petitioner's OSIP grant. The Hearing Officer found that the overpayment must be treated as an administrative error overpayment, but concluded that Petitioner's OSIP grant could be eliminated in order to recoup the overpayment. The Hearing Officer also concluded that the amount to be recouped was $1130. * * *

"On May 10, 1978, Petitioner requested reconsideration of the Final Order of April 14, 1978, and on May 19, 1978, the Chief Hearing Officer and Manager of the AFS Hearings Unit declined reconsideration. * * * It is the Final Order of April 14, 1978, that Petitioner seeks to have reviewed."

The only rule AFS has promulgated for the recovery of overpayments is OAR 461-07-270:

"The Adult and Family Services Division shall recover from an applicant or recipient the amount of any overpayment as defined in 461-07-250:

"(1) In OAA, AB, and AD cases, recovery may be made by reimbursement by the recipient, from cash available resulting from the overpayment, or from cash resources; by reduction of future assistance

[ 726 ]

payments by an amount not to exceed 10% of requirements at current payment levels or by reduction of any income disregard (see rule 461-07-060 for reduction of grant in congregate care cases).

"(2) In ADC and GA cases, if the overpayment is due to administrative error as defined in rule 461-07-255, recovery shall be limited to cash available as a result of the overpayment and allowable liquid assets as defined in rules 461-04-090—461-04-134. Recovery must also be made by disallowing that portion of the earnings disregard over $30 in ADC cases.

"(3) In ADC and GA cases, if the overpayment is due to the A/R's failure to notify the branch office of the receipt or possession of resources as required by rule 461-03-055 of these rules, the AFS shall recover the full amount of the overpayment by reimbursement from cash available resulting from the overpayment and allowable liquid assets as defined in rules 461-04-090 — 461-04-135 of these rules; by reduction of future assistance payments of an amount not to exceed 10% of requirements at current payment levels (with the exception of ADC grants); and/or by deduction of any income disregarded except that the ADC recipient is allowed to retain the first $30 of the earnings disregard. (See rule 461-07-060 for reduction of grant in congregate care cases.)

"An overpayment may be recovered from an ADC grant by reduction of the assistance payment only on a voluntary basis.

"(4) If there is evidence that the recipient is incompetent, recovery will be handled as an administrative error overpayment."

In order to determine the applicable subsection, we must determine whether the overpayment made to petitioner from the GA program makes this a "GA case" within the purview of subsection (2) as petitioner contends, or whether petitioner's current receipt of OSIP and SSI funds, in this case a category of Aid to the Disabled, requires that we hold this to be an "AD case," governed by subsections (1) and (3), as the state contends. Upon this distinction turns the available remedy. If the case is a GA case, then by the terms of

subsection (2), recovery is "limited to cash available as a result of the overpayment and allowable liquid assets." If, however, it is an AD case, subsections (1) and (3) indicate recovery may be had "by reduction of future assistance payments."

We believe that the case categorization must flow from the nature of the funds overpaid, and not from the current payments received by petitioner. In *Larsen v. Adult & Family Services Division,* 34 Or App 615, 619, 579 P2d 866 (1978), although not squarely presented with the instant question, we noted, "[b]ecause the medical assistance petitioner was receiving is part of the general assistance (GA) program, subsection [(3)] would be the provision of the regulation applicable to this case." Here, however, because of the addition of the administrative error, subsection (2) is the appropriate subsection.

Further militating against categorization according to one's current status is the consideration of the individual who has received an overpayment, but subsequently declines all assistance. It could hardly be contended that because he is no longer in *any* category he is not liable for repayment. Accordingly, OAR 461-07-270(2) is the applicable regulation.

Petitioner's second assignment of error relates to the order that he repay the full $1,130 overpayment. It is petitioner's contention that because he had only $700 of the overpayment on hand at the time of his receipt of notice, and recovery is "limited to cash available as a result of the overpayment," he is liable for only $700 repayment. The short answer, of course, is that the subsection also allows recovery from "allowable liquid assets." No time limits are imposed for recovery. It is our conclusion that there was no error in determining that the amount owed AFS is $1,130. Although only $700 is available from the overpayment, should any allowable liquid assets be currently available, or become available, they would be subject to recovery.

Affirmed in part; reversed in part and remanded for proceedings not inconsistent with this opinion.