Argued and submitted June 13,
reversed and remanded July 28, 1980

FORS,
*Petitioner,*
*v.*
MOTOR VEHICLES DIVISION,
*Respondent.*

(CA 16502)

615 P2d 331

Larry W. Stuber, Albany, argued the cause for petitioner. With him on the brief was Goode, Goode, Decker, Beckham & Nelson, P. C., Albany.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James M. Brown, Attorney General, Walter L. Barrie, Solicitor General, and Virginia L. Linder, Certified Law Student, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner appeals from an order of the Motor Vehicles Division (Division) suspending his driving privileges for a period of thirty days. On September 14, 1979, the Division issued an order of suspension pursuant to ORS 482.450(1)(d). That statute allows the Division to immediately suspend

" * * * the license of any person without hearing * * * when the division has reason to believe that such person:

"(d) Is a habitual incompetent, reckless or criminally negligent driver of a motor vehicle or has committed a serious violation of the motor vehicle laws of this state."

The decision to suspend in this case was based on petitioner's driving record. After being notified of the suspension, petitioner requested a hearing.[1] The hearing officer affirmed the order of suspension. We reverse.

Our scope of review is defined by the Administrative Procedure Act. ORS 482.490; ORS 183.482.[2]

---

[1] ORS 482.450(2) provides that:

"Whenever the division suspends the license of any person for any reason set forth in subsection (1) of this section, the division immediately shall notify the licensee and afford him an opportunity of a hearing before a representative of the division in the county wherein the licensee resides. The hearing shall be conducted as a contested case in accordance with ORS 183.310 to 183.500. Upon such hearing, the division either shall rescind the order of suspension, or, good cause appearing therefor, may continue, modify or extend the suspension of such license or revoke such license."

[2] ORS 482.490 provides that:

"Judicial review of orders denying, suspending or revoking a license, except where such suspension or revocation is mandatory, shall be as provided in ORS 183.310 to 183.500."

ORS 183.482(7) and (8) provide that:

"(7) Review of a contested case shall be confined to the record, the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion. In the case of disputed allegations of irregularities in procedure before the agency not shown in the record

The sole issue on appeal is whether the Division was obligated to follow its own procedures before suspending petitioner's license. At the heart of the dispute is OAR 735-31-005, which establishes a five step program for driver improvement. It provides that:

"(1) For the purpose of this rule, 'preventable accident' means an accident in which the driver failed to do everything he reasonably could have done to prevent it. The Advisory Letter (Warning): An advisory letter will be mailed when the driver has been convicted or forfeited bail on two moving violations or has been involved in two preventable accidents, or combination thereof, within a twelve-month period.

"(2) A Driver Safety Course: When a driver has been convicted or forfeited bail on any moving violation or has been involved in a preventable accident within six months (or two moving violations/preventable accidents or one major violation within twelve

which, if proved, would warrant reversal or remand, the Court of Appeals may refer the allegations to a Master appointed by the court to take evidence and make findings of fact upon them. The court shall remand the order for further agency action if it finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure.

"(8) (a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be: .

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice,, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record."

months) of the mailing date of the advisory letter, the driver shall be considered an habitual incompetent and be required to attend a driver safety course or a defensive driving course approved by the Motor Vehicles Division. Failure to enroll in or complete the driver safety course or the defensive driving course within ninety days of the mailing date of the scheduling letter will cause the driver's license to be suspended for an indefinite period or until the course is completed.

"(3) The 'Consider for Suspension' Letter: Subsequent to completion of the driver safety course or the defensive driving course, a 'Consider for Suspension' letter may be mailed when the driver has been convicted or forfeited bail on one moving violation in a six-month period or two in a twelve-month period, or has had one major violation following a driver safety course or a defensive driving course.

"(4) 'Notice of Intent to Suspend' (ISUS) Interview: Notice of Intent to Suspend interviews are scheduled at the convenience of the Division when the driver forfeits bail or is convicted of one moving violation within six months or two moving violations, or one major violation within twelve months of completion of a driver safety course or a defensive driving course.

"On the occasion of this interview, the Division may take one or more of the following actions:

"(a) Order suspension of the driver's license for a period of up to one year.

"(b) Issue a probationary license for a period of up to one year. The probationary license may require that the driver drive without bail forfeiture or conviction for a moving traffic violation, or may limit driving to certain days, hours, destinations, and purposes.

"(c) Require the driver to complete a rehabilitation program under the Division's direction or under the direction of other appropriate agencies.

"(d) Require the driver to complete the Division's examination (vision, law, and drive).

"(e) The Division may, at its discretion, in lieu of the ISUS interview, require the driver to complete a defensive driving course, or driver safety course.

[451]

"The Division will suspend a person's driver's license if he fails to appear for this interview, or if he declines to participate in the Driver Improvement Program or fails to meet the requirements of the Driver Improvement Program."

"(5) Suspension: The driver's license will be suspended if within six months of the 'Notice of Intent to Suspend' interview, the driver is convicted or forfeits bail on one moving traffic violation or within twelve months is convicted or forfeits bail on two moving violations. (All driving record suspensions will be for a period of from thirty days up to one year.) Under no circumstances will an occupational license be issued on a driving record suspension. * * *

"*Under routine procedure, a driver will be carried through each of the first four steps of the Driver Improvement Program. In exceptional cases, and at its discretion, the Division may omit any or all of the steps leading up to suspension.*"

In this case, the Division failed to follow steps three and four; the petitioner never received a "consider for suspension" letter and was never afforded the required interview. The hearing officer found that:

"1. On December 23, 1974 and on August 11, 1978, the Division mailed the Petitioner warning letters.

"2. On March 29, 1979, the Division required the Petitioner to complete a driver safety course which he completed April 21, 1979.

"3. In a three-year period ending August 14, 1979, the Petitioner was convicted of thirteen moving violations, four of which occurred in a twelve-month period ending August 14, 1979.

"4. On September 14, 1979, the Division suspended the Petitioner's driving privileges for thirty days. The suspension was rescinded pending the outcome of the hearing."

There is no indication in the record as to why petitioner was not afforded the benefit of all four steps; there is no statement that petitioner's case is an "exceptional" one, nor any indication as to what way it

[452]

is "exceptional," if the Division believes it to be so. The Division's regulations do not define "exceptional," and no standards exist to distinguish routine cases from exceptional ones.

■ Despite these rather glaring deficiencies, the Division offers two arguments in support of its action. Initially, it maintains that the steps prescribed in the rule are not mandatory. It argues that the provision allowing it to omit any or all of the steps in exceptional cases simply reserves its discretionary authority to order suspensions whenever the conditions specified in ORS 482.450(1)[3] are met. It notes that ORS 482.850(1) authorizes it to establish a driver improvement program, but does not mandate one. On that basis, the Division contends that an "exceptional" case is simply one where it chooses to omit some of the outlined steps.

We disagree. The regulation is clear. It provides that each of the four steps, prior to suspension, must be followed unless the case is an "exceptional" one. A case is not an exceptional one simply because some of the steps are omitted. "An unambiguous regulation, like an unambiguous statute, should not be interpreted but should be enforced according to its clear language." *Schoen v. University of Oregon,* 21 Or App 494, 500, 535 P2d 1378 (1975).

■ The Division, having made the rule in question, is bound to follow it. *Hale v. OSP,* 33 Or App 529, 532, 577 P2d 531 (1978); *Morse v. Division of State Lands,* 31 Or App 1309, 1314, 572 P2d 1075 (1978), *rev den* 281 Or 431 (1978). It is true that the regulation may limit the Division's discretion to suspend licenses, at least insofar as it requires compliance with each of the four steps before suspension. However, this court has stated that "[a]n agency which is vested with discretion by statute may limit its own discretion in its regulations." *Wyers v. Dressler,* 42 Or App 799, 807, 601 P2d 1268 (1979), *rev den* 288 Or 527 (1980). Once

---

[3] *See* fn 1, *supra.*

it has limited its discretion, the agency "may be compelled, * * * to act in accordance with its self-imposed limitations." *Id.,* at 807-808.

■        Alternatively, the Division argues that, even if the rule is read to require the Division to follow all four steps unless the case is an exceptional one, the findings made here demonstrate that petitioner's case is "exceptional." It is the Division's position that the program, by specifying the number and type of violations that bring each step into play, implicitly distinguishes between routine and exceptional cases. Under the Division's interpretation, routine case would involve no fewer than four violations and no more than six over a two or three year period. Petitioner was convicted of thirteen moving violations in a three year period.

Again, we disagree. While petitioner's case might very well fit within some "exceptional" category, and careful consideration would be given to the Division's interpretation of "routine," as opposed to "exceptional," in the proper situation, there is simply no finding that petitioner's case is "exceptional". This court has repeatedly stated that:

> "If there is to be any meaningful judicial scrutiny of the activities of an administrative agency—not for the purpose of substituting judicial judgment for administrative judgment but for the purpose of requiring the administrative agency to demonstrate that it has applied the criteria prescribed by statute and by its own regulations and has not acted arbitrarily or on an ad hoc basis—we must require that its order clearly and precisely state what it found to be the facts *and fully explain why those facts lead it to the decision it makes.* " (Emphasis supplied.) *Home Plate, Inc. v. OLCC,* 20 Or App 188, 190, 530 P2d 862 (1975); *See also Graham v. OLCC,* 25 Or App 759, 762, 551 P2d 112 (1976).

Assuming that the Division could find petitioner's case to be "exceptional" without having previously defined that term, the Division here has wholly

[454]

failed to explain those facts which lead it to the decision that this case is exceptional. Its order cannot stand.

We remand for compliance with the program outlined in OAR 735-31-005, or an adequately supported and explained finding on the record that petitioner's case is exceptional within the meaning of the regulation.

Reversed and remanded.