Submitted August 1, 2022, affirmed March 29, 2023

SUNNY OAKS, INC.,
*Petitioner,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent.*

Department of Human Services
2020DHS12670; A176103

527 P3d 1063

Petitioner, who operates a residential care facility for adults with developmental disabilities, seeks review of a final order issued by the Department of Human Services (DHS) that found it committed abuse by neglect under ORS 430.735. DHS initiated an abuse investigation after a nonverbal occupant of petitioner's facility was hospitalized on multiple occasions for problems relating to constipation. On review, petitioner contends that the investigation was not conducted in accordance with two administrative rules and that those investigatory violations materially impaired the fairness and correctness of the abuse determination. *Held*: Although the Court of Appeals agreed that DHS violated the administrative rules in conducting its investigation, the violations were not sufficient under the circumstances of this case to disturb the agency's ruling. That is, petitioner did not establish that DHS's failure to follow the prescribed procedures materially impaired either the fairness of the proceedings or the correctness of the agency's determination.

Affirmed.

Heidi W. Mason and Innova Legal Advisors PC filed the briefs for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

Petitioner, who operates a residential care facility for adults with developmental disabilities, seeks review of a final order issued by the Oregon Department of Human Services (DHS) that found it committed abuse by neglect under ORS 430.735. DHS initiated an abuse investigation after LR, a nonverbal occupant of petitioner's facility, was hospitalized on multiple occasions for problems relating to constipation. After a contested case hearing, DHS ultimately issued a final order concluding that there was a preponderance of evidence establishing the abuse determination. On review, petitioner does not challenge the abuse finding for lack of substantial evidence; rather, petitioner contends that DHS's failure to conduct the abuse investigation in accordance with two administrative rules was a violation of ORS 430.731 (requiring that investigations be conducted in a uniform, objective, and thorough manner) and ORS 430.737 (requiring that investigations be thorough and unbiased). Petitioner argues that those investigatory violations materially impaired the fairness and correctness of the abuse determination. As explained below, because the violations of the administrative rules are not sufficient under the circumstances of this case to disturb the agency's ruling and because we conclude that the fairness of the hearing was not materially impaired, we affirm.

We review an agency's order for errors of law and substantial evidence. ORS 183.482(8)(a), (c). Substantial evidence "exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). If we conclude that an agency's exercise of discretion is inconsistent with the agency's own rule and that inconsistency is not explained by the agency, we will remand the order to the agency under ORS 183.482(8)(b)(B). In conducting our review, "the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion." ORS 183.482(7). In accordance with those standards, we briefly recount the uncontested facts relied on by DHS to substantiate the abuse allegations.

        LR suffers from chronic constipation and thus had a "constipation protocol" in place whereby staff monitored and recorded LR's daily intake (food and drink) and elimination (bowel movements). The protocol required that staff notify a supervisor and LR's physician in the event that LR had no stool or only small stool in seven days.[1] On January 14, staff called 9-1-1 for transport to the hospital because LR had fluctuating temperatures, looked miserable, and was shaking profusely. LR's daily intake and elimination logs written by staff showed that between January 4 and January 14 no bowel movements were recorded that qualified for purposes of the protocol. In addition to the daily logs, staff completed a report on January 14 which provided that LR had not had a bowel movement for 11 days. The report further documented that there was nothing in LR's daily logs to indicate that she'd been given any constipation medications or that her physician had been notified.

        The doctor who evaluated LR on January 14 confirmed that she "was severely constipated but not to the point [where] they need to do surgery." LR was treated and discharged. On January 15, LR was again transported to the hospital due to vomiting and brown discharge coming from her nose. An ultrasound showed no evidence of bowel obstruction, but she was diagnosed with a urinary tract infection. DHS investigator Keen wrote to petitioner's Senior, Residential, and Executive Directors on January 15: "[Neither s]taff nor the house manager notified the doctor or took [LR] to the hospital until it had been 11 days since her last" bowel movement. Finally, on January 16, LR was taken to the hospital for a third time. She was discharged from the hospital four days later on January 20 with a principal diagnosis of "intractable nausea and vomiting likely due to constipation."

        Over 300 days later, DHS issued a Notice of Abuse Determination, concluding that petitioner had committed

---

    [1] LR's protocol had been updated on November 26, 2018, requiring notice to a supervisor and physician after just five days of no stool and eliminating the requirement that staff record LR's bowel movements. Petitioner was required to train its staff on the updated protocol by January 1, 2019. However, petitioner failed to do so until January 17, 2019, which was after the events at issue.

abuse by neglect of LR under ORS 430.735.[2] Petitioner sought a contested case hearing, arguing in a prehearing motion before an administrative law judge (ALJ) that DHS failed to adhere to the requirements set out in two administrative rules that govern the process for investigations into abuse of adults with disabilities. The first administrative rule is OAR 407-045-0300, which provides, in part:

> "(2)   In conducting an abuse investigation, the investigator shall attempt and, when possible, complete the following:
>
> "(a)   make in-person contact with the adult;
>
> "(b)   Interview the adult, witnesses, the AP and other individuals who may have knowledge of the facts of the alleged abuse or related circumstances."

The second rule, OAR 407-045-0320, requires that the report be submitted "[w]ithin 55 calendar days of receiving the complaint alleging abuse."

There is no dispute that DHS failed to adhere to the requirements of those rules. The DHS report was not submitted for more than 300 days after petitioner received the complaint, and DHS investigator Shaffer did not conduct interviews with LR, the staff responsible for the care of LR, or with LR's primary care physician. Despite those violations, the ALJ denied petitioner's motion, concluding that evidence of the timeliness, fairness, and thoroughness of the investigation would be considered in determining whether DHS had shown, by a preponderance of the evidence, that

---

[2] ORS 430.735 provides, in part:

"(1) 'Abuse' means one or more of the following:

"*****

"(e) Neglect.

"*****

"(10) 'Neglect' means:

"(a) Failure to provide the care, supervision or services necessary to maintain the physical and mental health of an adult that may result in physical harm or significant emotional harm to the adult;

"(b) Failure of a caregiver to make a reasonable effort to protect an adult from abuse; or

"(c) Withholding of services necessary to maintain the health and well-being of an adult that leads to physical harm of the adult."

petitioner was responsible for abuse of LR. After the con-
tested case hearing, the ALJ concluded that DHS had met
its burden and substantiated the abuse finding.

It is well established that where an administrative
rule does not specify a consequence for failing to adhere to
it, we are not authorized to impose one. *See, e.g.*, *Gleason
v. Oregon Racing Comm.*, 233 Or App 164, 168, 225 P3d
123 (2010) (explaining that "in the absence of some conse-
quence specified in the administrative rule for the failure
to hold a hearing within 90 days, we are not authorized to
impose one"); *Guzman v. Board of Parole*, 200 Or App 448,
456, 115 P3d 983 (2005), *rev den*, 340 Or 34 (2006) (reject-
ing the petitioner's argument that untimeliness of a hearing
required reversal of the board's order and explaining that
"[t]he remedy for a violation of the time requirements is an
issue of legislative intent"). A petitioner may still prevail,
however, even if there is no consequence specified in the
administrative rule or governing statutes, when the peti-
tioner demonstrates that the agency's failure to adhere to
the rule or rules compromised the petitioner's ability to have
a fair hearing. *Gleason*, 233 Or App at 169; *see also* ORS
183.482(7) (authorizing remand for further agency action
if "either the fairness of the proceedings or the correctness
of the action may have been impaired by a material error
in procedure"). Here, neither OAR 407-045-0300 nor OAR
407-045-0320 specify a consequence for failing to adhere to
the standards outlined in the rules. Accordingly, petitioner
can prevail only if we conclude that DHS's delayed inves-
tigation and decision not to interview key witnesses were
material errors that impaired petitioner's ability to have a
fair hearing.

We are unpersuaded that the agency's violations
impaired petitioner's ability to have a fair hearing, which
would require a remand under ORS 183.482(8)(b)(B). Shaffer
testified that the investigative delay was the result of staff
turnover at DHS. Regarding his decision not to interview
witnesses when he took over the case, Shaffer explained
that "[t]he reasoning behind that was to stick with a clear
written record that was created near the time of the incident
itself rather than to attempt to talk to staff about something

that had occurred roughly six or seven months prior." Thus, the agency explained the inconsistencies between the investigation and its own rules.

Further, none of the cases petitioner cites are persuasive given the circumstances of this case. Those cases are distinct from this one because, in those cases, the agencies' violations either compromised the correctness and fairness of the hearing in an identifiable way or were unexplained. *See, e.g.*, *Hale v. OSP*, 33 Or App 529, 532, 577 P2d 531 (1978) (reversing where the agency's delay, in violation of its rules, was prejudicial because the petitioner spent additional time in segregation); *Fors v. Motor Vehicles Division*, 47 Or App 447, 452-53, 615 P2d 331 (1980) (reversing where the agency suspended the petitioner's driver's license without adhering to the administrative rules, and the record contained no indication as to why they were not followed); *Glass v. AFSD*, 67 Or App 319, 323, 677 P2d 1096 (1984), *overruled in part on other grounds by Pahle v. AFSD*, 72 Or App 606, 696 P2d 1135, *rev den*, 299 Or 443 (1985) (holding that the Medical Review Team's failure to consider the plaintiff's exhibits tainted the determination and may have impaired the correctness and fairness of the decision). As explained above, the record here contains evidence as to why the rules were not followed and there has been no showing that the fairness of the hearing was materially impaired.

Finally, we reject petitioner's additional claims of harm or prejudice resulting from the rule violations, such as the impact to its public reputation and an inability to conduct its own internal investigation under OAR 411-323-0040.[3] Neither alleged harm affected the fairness or the

---

[3] OAR 411-323-0040 provides, in part:

"(5) When abuse is alleged or death of an individual has occurred and a law enforcement agency, the Department, or the designee of the Department has determined to initiate an investigation, the [certified] agency may not conduct an internal investigation without prior authorization from the Department. For the purposes of this section, an 'internal investigation' is defined as:

"(a) Conducting interviews of the alleged victim, witness, the accused person, or any other person who may have knowledge of the facts of the abuse allegation or related circumstances;

"(b) Reviewing evidence relevant to the abuse allegation, other than the initial report; or

correctness of the hearing, which would require a remand under ORS 183.482(7). That is, petitioner did not demonstrate that any impact on its public reputation altered—much less impaired—the fairness or the correctness of the proceeding. Similarly, petitioner did not demonstrate that DHS withheld authorization for an internal investigation to proceed under OAR 411-323-0040(5), much less that the results of any delayed internal investigation impaired the fairness or the correctness of the proceeding.

Accordingly, although we agree with petitioner's argument and DHS's acknowledgment that an investigative delay of more than 300 days is a violation of the applicable administrative rules, that conclusion does not necessitate a remand under the circumstances of this case. Petitioner has not established that the failure to follow the prescribed procedures materially impaired either the fairness of the proceedings or the correctness of the agency's determination.

Affirmed.

---

"(c) Any other actions beyond the initial actions of determining:

"(A) If there is reasonable cause to believe that abuse has occurred;

"(B) If the alleged victim is in danger or in need of immediate protective services;

"(C) If there is reason to believe that a crime has been committed; or

"(D) What, if any, immediate personnel actions must be taken to assure individual safety."