Submitted on record and briefs April 5, affirmed June 5, 2002

STATE ex rel Doane GONZALEZ,
*Relator-Appellant,*

*v.*

Michael WASHINGTON,
presiding member of the
Board of Parole and Post-Prison Supervision,
*Respondent.*

01C-12747; A114932

47 P3d 537

Doane Gonzalez filed the brief *pro se.*

Judy C. Lucas, Assistant Attorney General, filed the brief for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Appellant, who is incarcerated under the authority of the Department of Corrections (DOC), filed a petition for an alternative writ of mandamus, ORS 34.110 *et seq.*, requesting the trial court to direct the Board of Parole and Post-Prison Supervision (board) to apply certain administrative rules that he alleges should have limited his term of reimprisonment following a parole violation. The trial court dismissed his alternative writ, and appellant appeals. We affirm.

Appellant committed the crime of first-degree assault in September 1986 and was convicted and given an indeterminate sentence of 20 years in prison. His maximum term of incarceration is until January 25, 2015, without credit for good time. He was paroled in October 1991. He then absconded and committed a new crime. He was returned to DOC's custody in August 2000. The board held a hearing in November 2000 and "denied re-release, finding the inmate cannot be adequately controlled in the community." It also "reset [appellant's parole] release date to 08/16/2003 following 48 months."

Appellant sought administrative review. The board affirmed its previous order, ruling that

"[b]oth the Oregon Administrative Rules and the Oregon Revised Statutes have always authorized the board to deny an offender's re-release on parole after revoking his parole. * * * [T]he board could deny your re-release on parole and order that you remain in custody for any period of time up to your statutory good time date which is currently April 12, 2010. The board did not violate any rules, polic[ies], statutes, or constitutions by making this decision."

Appellant then sought a writ of mandamus in the trial court, requesting the court to order the board to reset his release date within 24 months in accordance with OAR 255-75-095 (1985).[1] The board moved to dismiss appellant's alternative writ, and the trial court granted the board's motion in

---

[1] Throughout the remainder of this opinion, citations to statutes and administrative rules are to those that were in effect at the time appellant committed his crime in September 1986.

June 2001. In its letter opinion, the trial court ruled, "Defendant's Motion to Dismiss is GRANTED for the reason that [appellant] has not established a clear right to mandamus relief." Appellant appeals the dismissal of his alternative writ.

On appeal, appellant contends that he has established his entitlement to mandamus relief because "the Board did not have discretion and was limited to the ministerial performance" of setting a rerelease date in accordance with OAR 255-75-090[2] and because no statute or administrative rule authorized the board to set the new rerelease date following 48 months of incarceration. The board responds that, under the statutes and rules in effect at the time appellant committed his crime, a parole violator could either be "sanctioned," in which case the administrative rule on which appellant relies would apply, or could be "revoked" and required to serve up to the remainder of the original indeterminate sentence, less any applicable good time. According to the board, under those rules an inmate who had been revoked could receive a new parole release date that was unrelated to the "sanctions" for parole violations.

The prerequisites to seeking mandamus relief are established by statute. *See* ORS 34.110 (writ of mandamus is issuable to compel performance of an act that the law specially enjoins and as to the performance of which the relator lacks any other plain, speedy, and adequate remedy). We turn to the merits of appellant's argument that the board was required by OAR 255-75-090 through OAR 255-75-096 to set his release date for 24 months or less. We review the trial court's dismissal of his alternative writ of mandamus for errors of law. ORS 34.240. If the board had a permissible range of actions to choose from, and it chose from within that range, then appellant is not entitled to mandamus relief as a matter of law. ORS 34.110 ("[T]hough the writ may require such * * * board * * * to exercise judgment, or proceed to the discharge of any functions, it shall not control judicial discretion.").

---

[2] The administrative rules cited herein have been renumbered. For ease of discussion, throughout this opinion we cite according to the former numbering.

It is helpful to begin our analysis by tracing the chronology of a revocation proceeding through the statutory framework of ORS chapter 144, as it existed at the time that appellant committed his crime.[3] Under ORS 144.340,[4] a person who had violated the conditions of parole could be "retaken and returned" to a correctional facility for the purpose of conducting a parole violation hearing under ORS 144.343. Under ORS 144.370, the board could then order "suspension" of a person's parole following his or her detention on a parole violation, before the hearing was held on the alleged violation.[5]

Then, under ORS 144.343, and before the parole violation hearing, the returned person was to be notified of several matters, including the fact that the hearing was being held to determine whether a violation had occurred and, if so, whether the person should either be (1) "reinstate[d] or continue[d]" on parole "subject to the same or modified conditions of parole" or (2) "revoke[d]" from parole and required to serve the remainder of the sentence.[6] ORS 144.345 also expressly provided authority to the board to "revoke," or deny, parole following a parole violation. It provided:

"Whenever the State Board of Parole considers an alleged parole violator and finds such person has violated one or more conditions of parole and the evidence offered in mitigation does not excuse or justify the violation, the board may revoke parole."

---

[3] The statutes and the administrative rules in effect in 1986 continue to have some effect in other cases, depending on when the particular underlying crimes were committed.

[4] ORS 144.340 provided:

"The Corrections Division, in accordance with the rules and regulations or directions of the State Board of Parole or the Governor, as the case may be, may cause to have retaken and returned persons to the institution, whether in or out of the state, whenever they have violated the conditions of their parole."

[5] ORS 144.370 provided:

"Within 15 days after the issuance of an order, under the provisions of ORS 144.350, the board may order suspension of the detained person's parole. A hearing shall then be conducted as promptly as convenient pursuant to ORS 144.343."

[6] ORS 144.343(6) also spoke in terms of "reinstating" or "continuing" parole, on the one hand, or "revoking" it, on the other.

After the hearing on the alleged violation was held, the board could either "reinstate or continue the alleged parole violator on parole subject to the same or modified conditions of parole" or "revoke parole and require that the parole violator serve the remaining balance of sentence as required by law." ORS 144.343(6). ORS 144.390 provided that, if the board elected to revoke parole and recommit the prisoner,

"[the] prisoner * * * shall serve out the sentence, but * * * shall receive full credit against the sentence for any time the person has served on parole before the date of the suspension or arrest order issued by the State Board of Parole, except that all such persons recommitted shall serve a minimum time of six months."

As to the authority of the board if it decided not to revoke parole, but instead elected to reinstate the person on parole, the statutes were silent. However, there were administrative rules that governed the imposition of sanctions on parole violators who had not been revoked under the above circumstances. OAR 255-75-090(1)(a) and (b) provided:

"Parole violators returned with no new prison commitment shall be given an additional prison term within the following guidelines *unless the Board* finds aggravation/mitigation or *denies parole*:

"(a)   Violations not involving a finding of new criminal activity shall result in an additional term of four to eight months.

"(b)   Violations involving finding of new criminal activity shall result in an additional term from eight to 12 months." (Emphasis added.)

The rule expressly stated that the described terms are applicable "unless the board * * * denies parole."

Also, OAR 255-75-095 provided for "variations" from the four- to eight-month and eight- to 12-month terms set out in OAR 255-75-090 (1)(a) and (b) for aggravation and mitigation. The variations could be applied if the board found the existence of aggravating or mitigating factors set out in exhibits and in Division 35 of the rules. In contrast, OAR 255-75-096 expressly provided authority for the board to deny

parole after a violation and to require, instead, the service of the remainder of a sentence. This rule implemented the authority of ORS 144.345 by restating the board's authority to revoke parole, and it expressly added the consequence of service of the remainder of the sentence. That administrative rule therefore also gave effect to ORS 144.390's requirement of "serv[ing] out the sentence."

The problem in this case is framed by ORS 144.395, which provides:

"The board shall adopt rules consistent with the criteria in ORS 144.780 relating to the rerelease of persons whose parole has been revoked."

Appellant's position is that OAR 255-075-090 through OAR 255-75-096 are the rules that related to the rerelease of persons whose parole had been revoked previously. If, as appellant asserts, those rules were applicable to parole violators whose parole had been revoked, then the board would have had to follow the presumptive additional terms provided by the rules or make findings to justify a departure from them. It would have had no discretion except that authorized by the departure factors provided for in OAR 255-75-095. However, if those rules applied only to parole violators who were "reinstated" or "continued" on parole with "sanctions," then the board was authorized to exercise its discretion to require appellant to serve out the remainder of his sentence under ORS 144.390, and the trial court properly denied appellant's petition for a writ of mandamus.

The language in OAR 255-75-090 indicated that its presumptive prison terms did not apply to parole violators like appellant whose parole had been revoked. Said differently, OAR 255-75-090 through OAR 255-75-096 were not the rules that governed the "rerelease" of revoked inmates. First, the rule referred to parole violators who had been "returned"; that is, parole violators whose parole had not yet been revoked, continued or reinstated but who were awaiting a hearing under ORS 144.343. Second, the rule expressly provided that the described presumptive terms were applicable "unless the board * * * denies parole." Also, there are indications outside the text of OAR 255-75-090 that the board's discretion was not fettered by OAR 255-75-090's presumptive

terms when it decided to revoke parole and require service of the remainder of a sentence. In OAR 255-075-096, the board was expressly granted authority to deny parole and require service of the remainder of a sentence, including a mandatory minimum of six months of additional time.

Thus, in context, the statutes and rules contemplated that, after the commission of a violation of parole, and following the violator's "return" and a hearing, a parole violator's parole could either be reinstated or continued, with or without the imposition of a "sanction" or, alternatively, could be revoked. When the parole violator's parole was reinstated or continued, the board could impose modified conditions of parole. ORS 144.343(3)(g)(B). Those "sanctions," or modified conditions, could not exceed four to eight months of additional incarceration for violators who did not commit a new crime, or eight to 12 months for violators who did commit a new crime, unless the board made findings supporting a departure. It is consistent with the statutory scheme to regard the board as having had the authority under the above rules to impose confinement "sanctions" as "modified" conditions of reinstatement or continuation of parole.

Alternatively, when a parole violator's parole was revoked, the person could be required to serve out the balance of his or her sentence. The presumptive terms of four to eight months or eight to 12 months did not apply, nor did the requirements of finding aggravating factors in order to require longer terms of incarceration. Under ORS 144.390, a permissible consequence of revocation of parole was service of the remainder of the sentence. The revoked parole violator was eligible for rerelease on parole subsequently, but that rerelease was a matter entirely separate from the imposition of "sanctions" on a person whose parole was never revoked.

Those statutes and rules, when read together, authorized the board to take its action in this case. Appellant's parole was revoked within the meaning of ORS 144.343, and consequently the board was authorized to require him to serve the remainder of his sentence. Instead, it set a new rerelease date pursuant to the authority provided by ORS 144.395, which allowed the board to set a new parole release date for a parole violator whose parole had been

revoked. The new release date was unrelated to the "sanction" terms set out in OAR 255-75-090 and OAR 255-75-095; it follows that the board's discretion in resetting appellant's release date for 48 months is circumscribed only by ORS 144.390 and any rules promulgated under ORS 144.395.[7]

As the board points out, the Supreme Court held in *Bollinger v. Board of Parole*, 329 Or 505, 515, 992 P2d 445 (1999), that prisoners do not have the right to refuse the parole that the board has authorized. *See also Kessler v. Board of Parole*, 145 Or App 584, 590-91, 931 P2d 801, *rev den* 329 Or 61 (1997) (rejecting the argument that the board erred in setting a release date before the good time release date, relying on *Bollinger v. Board of Parole*, 142 Or App 81, 420 P2d 1111 (1996)). An abuse of discretion occurs only when the board exceeds the legal bounds on its authority. *Bi-Mart Corp. v. Allen*, 164 Or App 288, 291, 991 P2d 1087 (1999). By exercising its authority to require appellant to serve only 48 months of the remaining balance of his sentence, the board did not exceed its authority; instead, it exercised another aspect of its authority, which allowed it to refuse parole to him for the entire remainder of his sentence or to set a new parole release date. That was an exercise of discretion, and "a writ of mandamus * * * shall not control judicial discretion." ORS 34.110. Consequently, the trial court did not err in dismissing appellant's petition for a writ of mandamus.

Affirmed.

---

[7] Appellant argues only that the board was required to follow OAR 255-75-090 through OAR 255-75-096. We do not decide if any other rules not relied on by him could apply.