Submitted May 28, affirmed July 30, petition for review denied November 26, 2008
(345 Or 417)

## ROBERT LEWIS HIMES,
*Petitioner,*

*v.*

## BOARD OF PAROLE
## AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A126997

190 P3d 466

Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, and Irene B. Taylor, Deputy Public Defender, Office of Public Defense Services, filed the brief for petitioner.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Ortega, Judge, and Carson, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

In 1994, the Board of Parole and Post-Prison Supervision revoked petitioner's parole and denied rerelease based on a finding that he had committed an aggravated parole violation. In *Himes v. Thompson*, 336 F3d 848 (9th Cir 2003), the Ninth Circuit Court of Appeals granted petitioner federal habeas corpus relief as to the board's rerelease order.[1] In response to the Ninth Circuit's decision, the board reopened and reconsidered its order denying rerelease. After reconsideration, it issued an order again denying rerelease, establishing a 332-month prison term, and setting a parole release date consistent with that term. Petitioner now seeks judicial review of that order, asserting that the board lacked authority to impose a revocation sanction beyond the 10-month period authorized by *former* OAR 254-70-042 (July 19, 1978)[2] for nonaggravated parole violations, because the board has not adopted rules governing post-revocation parole release for aggravated violations.[3] We affirm.

In March 1979, petitioner was sentenced to consecutive sentences totaling 70 years for four felony offenses, including first-degree rape and first-degree sodomy, that arose out of two criminal episodes that occurred in November 1978. The board released petitioner on parole in April 1994. The board revoked his parole in August 1994, based on its determination that petitioner had violated the condition of his supervision that required him to answer all questions promptly and truthfully. On administrative review, the

---

[1] In that case, the federal appeals court concluded that the board's application of rules adopted after petitioner committed his underlying offenses—rules that the court deemed more onerous than the rules in effect when petitioner committed those offenses—violated the Ex Post Facto Clause of the United States Constitution. *Himes*, 336 F3d at 864. The court granted federal habeas corpus relief to petitioner, thus, in effect, remanding the case to the board for reopening and reconsideration of its rerelease decision under a different set of rules. Petitioner does not contend that the board failed to carry out the federal court's directive. Because the federal court decision does not otherwise inform the issue before us, we do not consider it further.

[2] All references to *former* OAR 254-70-042 refer to the version effectuated on July 19, 1978.

[3] Petitioner also argues that substantial evidence does not support the board's order. We reject that argument without discussion.

board denied relief. Petitioner did not seek judicial review of the order revoking his parole.

In October 1994, the board held a future disposition hearing and denied petitioner rerelease; it also denied relief on administrative review of that order. The board scheduled petitioner's next parole review for May 2024, thus requiring petitioner to serve a minimum of 29½ additional years in prison for the parole violation. *Himes*, 336 F3d at 852. Petitioner sought judicial review of that order. In 1996, this court affirmed the board's future disposition decision without opinion, and the Oregon Supreme Court denied review. Petitioner later filed a federal habeas corpus proceeding and, in July 2003, the federal appeals court issued its decision remanding the case to the federal district court with instructions to issue a writ of habeas corpus.

■ In November 2003, in response to the federal court decision, the board reopened petitioner's future disposition hearing and reconsidered the matter. The board again denied rerelease and set a parole release date of February 25, 2022, based on its determination, pursuant to *former* OAR 254-70-042,[4] that the violation was aggravated because it occurred less than six months after petitioner was released on parole.

When petitioner committed his crimes, ORS 144.343(2) (1977) provided:

"(2) The board may:

"(a) Reinstate or continue the alleged violator on parole subject to the same or modified conditions of parole; or

"(b) Revoke parole and require that the parole violator serve the remaining balance of [the] sentence as provided by law."

---

[4] *Former* OAR 254-70-042 provided, in part:

"(2) A parolee revoked and returned after release with an original crime severity of 6 or 7 shall serve six to ten months unless aggravating or mitigating factors are present.

"(3) Usual, but not exclusive factors in aggravation or mitigation are shown in Exhibit G."

Exhibit G listed, among aggravating factors, "Less than 6 months to first difficulty."

The board revoked petitioner's parole within the meaning of that statute. As a consequence, the board had authority to require petitioner to serve the entire remainder of his sentence in prison. *See Cole v. Board of Parole*, 220 Or App 362, 365, 186 P3d 321 (2008); *State ex rel Gonzalez v. Washington*, 182 Or App 112, 116-18, 47 P3d 537 (2002). With respect to that issue, in *Cole*, we stated that, "[t]he question in this case, and in *Gonzalez*, concerned the board's authority to deny [rerelease] on parole to parole violators. As explained in *Gonzalez*, there is no doubt that the board has statutory authority to do this. 182 Or App at 116-18." *Cole*, 220 Or App at 364. In *Gonzalez*, we relied on ORS 144.343 as the statutory source of authority for the conclusion that, upon revocation of his parole, "the board was authorized to require [the appellant] to serve the remainder of his sentence." 182 Or App at 119.

Here, instead of requiring petitioner to serve his entire remaining sentence in prison, the board set a new rerelease date under ORS 144.395 (1977), which authorized the board to adopt rules relating to the rerelease of offenders whose parole has been revoked.[5] *See Gonzalez*, 182 Or App at 119-20 (explaining board's authority to do so under identical 1986 statute). Petitioner initially argues that ORS 144.395 (1977) does not itself give the board authority to release an offender on parole after revocation of parole. He asserts: "That statute only authorizes the board to promulgate rules for releasing an offender on parole after parole revocation." Petitioner contends that the board lacked authority to apply *former* OAR 254-70-042 and to set a rerelease date beyond 10 months based on an aggravation factor, because no board rule had established a range of extended prison terms for aggravated parole violations.[6] In the absence of such a range,

---

[5] As does the current version of the statute, ORS 144.395 (1977) provided, "The board shall adopt rules consistent with the criteria in ORS 144.780 relating to the rerelease of persons whose parole has been revoked."

[6] Petitioner also asserts that such rules were required to be consistent with ORS 144.780. However, ORS 144.780 establishes ranges of duration of imprisonment to be served *prior to release* on parole. ORS 144.780 (1977) provided:

"(1) The commission shall propose to the board and the board shall adopt rules establishing ranges of duration of imprisonment to be served for felony offenses prior to release on parole. The range for any offense shall be within the maximum sentence provided for that offense.

petitioner asserts that the board was required to impose a term no longer than that expressly authorized for a nonaggravated violation based on his crimes' severity, namely, 10 months. *See former* OAR 254-70-042(2). Citing *Megdal v. Board of Dental Examiners*, 288 Or 293, 321, 605 P2d 273 (1980), in which the court held that, where an agency has statutory authority to promulgate rules regulating conduct but fails to do so, the agency lacks authority to regulate the conduct, petitioner argues that the board unlawfully made an ad hoc determination. We disagree.

By 1978, when petitioner committed his offenses, the board had adopted *former* OAR 254-70-042 pursuant to its authority under ORS 144.395 (1977) to promulgate rules pertaining to the rerelease of offenders whose parole had been revoked. Among other problems, petitioner's argument is based on the mistaken premise that ORS 144.395 (1977) required the board to adopt "ranges" that are consistent with the criteria in ORS 144.780. That is not the case. Instead, ORS 144.395 (1977) merely required the board to adopt "rules" consistent with those criteria. Thus, petitioner's argument would require us to insert words into the statute that the legislature omitted. That we cannot do. ORS 174.010. In any event, *former* OAR 254-70-042 did include "ranges." For nonaggravated violations, those ranges were particularized based on the severity of the underlying offense. Thus, *former* OAR 254-70-042(2) authorized a range of six to ten months for "a parolee revoked and returned after release with an original crime severity of 6 or 7[.]" For aggravated violations, the rule implicitly allowed the imposition of terms "ranging" between the upper end of the applicable range for a nonaggravated violation and the entire remaining balance of the

---

"(2) The ranges shall be designed to achieve the following objectives:

"(a) Punishment which is commensurate with the seriousness of the prisoner's criminal conduct; and

"(b) To the extent not inconsistent with paragraph (a) of this subsection:

"(A) The deterrence of criminal conduct; and

"(B) The protection of the public from further crimes by the defendant.

"(3) The ranges, in achieving the purposes set forth in subsection (2) of this section, shall give primary weight to the seriousness of the prisoner's present offense and his criminal history."

offender's indeterminate sentence. Thus, the rule implicitly authorized a broader range based on aggravating factors.

■      It follows that petitioner's reliance on *Megdal* is misplaced. *Megdal* addressed the requirement for agency rulemaking in advance of adjudication. The licensing statute at issue in *Megdal* required the board to "expand the list of conduct deemed unprofessional for disciplinary purposes by rules[.]" 288 Or at 316. The court held that

> "the breadth of potential administrative choice to develop and execute the term 'unprofessional conduct,' together with the agency's authority to make rules on that topic and the similarity of the agency with other licensing boards for whom rulemaking was mandatory, indicated a legislative intent that the standard must be explained by rules. We examined the character of the statutory term itself, the rulemaking authority delegated to the agency and we compared the agency's task and structure with comparable agencies to reach our conclusion."

*Trebesch v. Employment Division*, 300 Or 264, 269, 710 P2d 136 (1985) (explaining the court's reasoning in *Megdal*). It is well settled, however, that an agency need not adopt rules establishing the agency's policy in regard to every possible factual circumstance that may arise in the course of the agency's exercise of its enforcement functions. *See Larsen v. Adult & Family Services Division*, 34 Or App 615, 619-21, 579 P2d 866 (1978) (agencies are not subject to "an inflexible requirement that every refinement of an articulated policy be promulgated through" prior rulemaking); *see also Trebesch*, 300 Or at 270 (*Megdal* does not require that all policymaking functions be exercised only after rulemaking); *Megdal*, 288 Or at 314 (rules need not "catalogue all the types" of conduct that are subject to enforcement action in order to serve the purposes of "giving notice of censurable conduct" and confining the agency's discretion to the announced standards).

Here, unlike the agency in *Megdal*, the board did not make an ad hoc determination. Rather, it applied an existing rule that implicitly established standards for setting petitioner's rerelease date based on a finding that his parole violation was aggravated. The fact that the range of the board's discretion was broader than petitioner wishes does not make

the exercise of that discretion unlawful. As discussed, if the board had chosen to do so, after revoking his parole it could have required petitioner to serve the entire remainder of his sentence, as authorized by ORS 144.343(2)(b) (1977). By requiring him to serve a shorter term—as it did here—based on the application of a rule that was consistent with the terms of its authorizing statute, ORS 144.395 (1977), the board did not act unlawfully.[7]

Affirmed.

---

[7] We reject without discussion petitioner's unpreserved argument that the board set his rerelease date "arbitrarily," thereby violating his constitutional right to procedural due process.