Argued and submitted March 10, 2015, affirmed November 16, 2016, petition for review denied February 2, 2017 (360 Or 851)

THOMAS M. HA,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A154375

386 P3d 70

Jason E. Thompson argued the cause for petitioner. With him on the brief was Ferder Casebeer French & Thompson, LLP.

Jeff J. Payne argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Sarah M. Villanueva, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## HADLOCK, C. J.

The Board of Parole and Post-Prison Supervision revoked petitioner's parole based on its determination that he had violated conditions of his release. The board then held a future-disposition hearing, and it subsequently entered an order denying petitioner rerelease on parole and setting a new parole release date in 2022. On judicial review, we affirm.

For purposes of judicial review, the facts are undisputed. Petitioner was convicted of two counts of first-degree robbery and one count of second-degree assault in 1989, for crimes committed in May of that year. He was sentenced to indeterminate 20-year terms of incarceration on each of the robbery convictions and an indeterminate 10-year term on the assault conviction, each to be served consecutively. Petitioner was paroled in 2005 but, a few years later, committed new crimes and was reincarcerated. Petitioner subsequently was released on parole again, and he remained on parole at the time of the events that gave rise to the proceedings at issue here.

In early 2012, petitioner was involved in a single-vehicle car crash. A hearing was held to determine whether the circumstances of that accident showed that petitioner had violated the terms of his parole. Evidence admitted at the hearing included testimony indicating that petitioner had driven while he had intoxicants in his system, had wrecked the car he was driving by driving it over a berm and crashing it into a house, and had been observed leaving the scene, where he had been the only person present. A firearm was found in the wrecked car. The hearings officer determined that petitioner had violated the conditions of his parole, finding that petitioner had used illegal controlled substances, had failed to obey all laws (based on evidence that he had driven recklessly and had failed to perform the duties of a driver), and had possessed a firearm. The hearings officer recommended that petitioner's parole be revoked. The board agreed with that recommendation and revoked petitioner's parole in May 2012. Petitioner sought judicial review of the board's order revoking his parole; we affirmed

that order without opinion. *Ha v. Board of Parole*, 270 Or App 753, 352 P3d 105, *rev den*, 357 Or 595 (2015).

In September 2012, the board held a future-disposition hearing to determine what consequence should follow the revocation of petitioner's parole. At that hearing, the board determined that two "aggravating factors" increased the severity of petitioner's parole violations: the fact that petitioner's parole previously had been revoked and petitioner's repetition of conduct associated with his crimes, *i.e.*, "a return to drug or alcohol abuse."[1] The board also found one mitigating factor, *i.e.*, more than nine months had passed before petitioner had his "first difficulty on this supervision period." Based on those factors, as well as petitioner's "lengthy criminal history," the board concluded that it was necessary to deny petitioner rerelease on parole "for the protection of the community and for [his] reformation." However, instead of simply denying rerelease on parole altogether, the board exercised its discretion "to establish a new release date of February 9, 2022, following ten years" of incarceration. Accordingly, the board explained, petitioner will be released on parole on that date and "will remain on parole to [his] maximum sentence date," which, at the time of the hearing, was in 2032.

Petitioner seeks judicial review of the order that reflects the board's denial of his rerelease on parole. He raises three assignments of error on review. We reject the first and second assignments of error without discussion.

In his third assignment of error, petitioner argues that the board erred in denying him rerelease on parole and requiring him to remain incarcerated for 10 more years. He acknowledges that ORS 144.343(2)(b) (1987)—the version of the statute in effect when petitioner committed the crimes for which he was on parole in 2012—authorizes the board, on revoking a person's parole, to "require that the parole violator serve the remaining balance of the sentence as provided by law." Nonetheless, petitioner relies on *former* OAR 255-75-079 (Apr 19, 1989) to argue that the board could not

---

[1] The board made those findings "per Exhibit H," referring to an exhibit that, at the pertinent time, listed specific aggravating factors, including those on which the board relied in this case.

properly defer his parole release date for 10 years.[2] That rule provided, in part:

"(1)  Parolees whose parole has been revoked for technical violation(s) shall serve further incarceration of 6 months.

"(2)  Parolees whose parole has been revoked for conduct constituting a crime shall serve further incarceration of 8 months, unless mitigation or aggravation is found pursuant to Exhibit H or E.

"(3)  Incarceration in excess of 8 months must be based upon findings of aggravation after a hearing."

Petitioner makes various arguments under the first two subsections of that rule, contending that—as applied to the facts of this case—the rule limited the board to incarcerating him for a further six or eight months, instead of denying rerelease and ordering that he remain incarcerated for another 10 years. Moreover, petitioner argues, even if subsection (3) of the rule permitted the board to incarcerate him for more than eight months, the board was required "to adhere to its own 'standard variation guidelines'" in determining how long to keep petitioner imprisoned under OAR 255-75-079.

Petitioner's argument does not take into account either OAR 255-75-096, on which the board expressly relied, or our decision in *State ex rel Gonzalez v. Washington,* 182 Or App 112, 47 P3d 537 (2002), in which we addressed the circumstances under which the board has authority to deny an inmate rerelease on parole rather than imposing more limited incarceration sanctions. The inmate in *Gonzalez* had committed the crime for which he was paroled in 1986. Following parole violations, the board revoked his parole and denied rerelease on parole. The board also set a new release date for the inmate following an additional four years of incarceration. *Id.* at 114. The inmate argued that the board lacked authority to keep him incarcerated any longer than 24 months, based on *former* OAR 255-75-090 (Feb 28, 1985), which required the board to give parole violators certain

---

[2] Throughout this opinion, when referring to the administrative rules that were in effect when petitioner committed his crimes, we are citing the temporary rules that were effective from April 19, 1989 through October 15, 1989.

specified "'additional prison term[s]'" unless the board "'denie[d] parole.'" *Id.* at 117 (quoting *former* OAR 255-75-090(1) (Feb 28, 1985)).

We rejected that argument because it was based on a flawed interpretation of the board's administrative rules. In assessing the import of those rules, we observed that they had to be read together with the pertinent statutes, including ORS 144.343 (1985), which provided that the board could, after revoking parole, "'require that the parole violator serve the remaining balance of [the] sentence as required by law.'" *Id.* at 117 (quoting ORS 144.343(6) (1985)); *see id.* at 119 (considering "statutes and rules, * * * read together"). Alternatively, if the board decided not to revoke parole, the board could "reinstate or continue the alleged parole violator on parole subject to the same or modified conditions of parole." ORS 144.343(6) (1985).

Considering the pertinent rules in the context of those statutes, we explained that the limited incarceration terms set out in *former* OAR 255-75-090 (Feb 28, 1985) did not apply when the board denied an inmate rerelease on parole, but were sanctions that applied only when "the parole violator's parole was reinstated or continued." *Gonzales*, 182 Or App at 119. Instead, when the board decided to revoke a parolee's parole and deny rerelease, the consequence of revocation was governed by *former* OAR 255-75-096 (Feb 28, 1985), which stated that the board could "deny reparole consideration and require the parole violator to serve to the statutory good time date." Under that latter rule, we held, the board could "deny parole and require service of the remainder of a sentence"; it also had discretion to set a new parole release date not governed by the limited sanctions set out in *former* OAR 255-75-090 (Feb 28, 1985). *Id.* at 119-20.

*Gonzalez* is not directly controlling because the rules that we considered in that case had been amended or repealed by the time petitioner committed his crimes in May 1989. Nonetheless, consideration of the rules and statute that were in effect when petitioner committed his crimes leads to the same result. At that time, ORS 144.343 (1987) still gave the board authority, after conducting a parole-revocation hearing and on finding that the parolee violated

the terms of his or her release, either to reinstate or continue the violator on parole "subject to the same or modified conditions of parole" or to "require that the parole violator serve the remaining balance of the sentence as provided by law." ORS 144.343(2)(a), (b) (1987); *see* ORS 144.343(6) (1987) (similar).

The board's rules also continued to distinguish between setting a rerelease date, after certain limited periods of reincarceration, and denying rerelease on parole. Specifically, OAR 255-75-072 provided that, "[a]t the time of the revocation decision," the board was to issue "an order concerning rerelease on parole," in which the board could take any one of three paths. The board could continue a parole violator's parole pursuant to rules not applicable here, "set the rerelease date in accordance with [OAR] 255-75-079," or "defer the rerelease decision pending a future disposition hearing," OAR 255-75-072. Thus, OAR 255-75-079 came into play only when the board immediately chose to set a "rerelease date" according to that rule's terms. (Indeed, the rule was titled "Guidelines for Rerelease.") If the board instead chose to "defer the rerelease decision," it would hold a future-disposition hearing. The board could order "[d]enial of rerelease on parole" after such a hearing if it found "aggravation pursuant to Exhibit E or Exhibit H." OAR 255-75-096(1), (2). In those circumstances, OAR 255-75-096(1) allowed the board to "deny rerelease on parole" and "require the parole violator to serve to the statutory good time date."

That is what happened here. After deciding to revoke petitioner's parole, the board scheduled a future-disposition hearing. At the beginning of that hearing, a board member explained to petitioner that the board would be deciding whether to set a new parole release date (presumably pursuant to OAR 255-75-079) or deny him rerelease on parole. After considering the evidence, the board took the latter course, determining based on aggravating factors listed in Exhibit H that it would "revoke parole and require that [petitioner] serve the remaining balance on [his] sentence as provided by law." OAR 255-75-096 and ORS 144.343(2)(b) (1987) authorized the board to take that action. Because the board had determined to revoke petitioner's parole and not

to grant him rerelease, the board was not limited to imposing the short, additional terms of incarceration set out in OAR 255-75-079.[3]

Affirmed.

---

[3] As in *Gonzalez*, after deciding to deny petitioner rerelease on parole, the board took the further step of exercising its discretion to set a parole release date following additional years of incarceration (here, 10 years; in *Gonzalez*, four years), rather than simply declining to set a parole release date altogether. Petitioner does not contend that, if the board had authority to deny him rerelease on parole under OAR 255-75-096, it lacked authority to set a parole release date 10 years out.