**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 16 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOSEPH MENDOZA; et al.,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>LITHIA MOTORS, INC.; et al.,<br><br>Defendants-Appellees. | No.   19-35341<br><br>D.C. No. 6:16-cv-01264-AA<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Submitted May 12, 2020[**]
Portland, Oregon

Before:  BYBEE and VANDYKE, Circuit Judges, and CARDONE,[***] District Judge.

Appellants appeal from the district court's grant of Appellees' Motion for

Summary Judgment.  Because the parties are familiar with the facts, we will not

---

[*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]        The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

recite them here. We have jurisdiction under 28 U.S.C. §§ 1291 and 1294.

The sole issue presented in this appeal concerns the interpretation of Oregon Administrative Rule 137-020-0020(3)(k) (the "Undisclosed Fee Payments Rule," or the "Rule"), which reads as follows:

> Undisclosed Fee Payments -- A dealer who sells or leases a motor vehicle to a consumer and makes any payment to any non-employee third-party in conjunction with the sale or lease, other than a referral fee of $100 or less (also known as a "bird-dog" payment), must specifically itemize such payment on the consumer's purchase order, lease agreement and retail installment contract . . . .

Or. Admin. R. 137-020-0020(3)(k) (2020).

Appellants argue that "any payment" should be read to encompass literally any payment that a car dealership makes to a third party in connection with the sale or lease of a vehicle, and, specifically, the prices that dealerships pay for service and insurance products that they mark up and sell to their customers. For their part, Appellees argue that the Rule, when read in context, only requires dealerships to itemize referral fees of greater than $100.

As a matter of first impression, the district court adopted Appellees' narrow reading of the Undisclosed Fee Payments Rule and granted their motion for summary judgment. We review the district court's grant of summary judgment, including its interpretation of regulations, de novo. *See Munoz v. Mabus*, 630 F.3d 856, 860 (9th Cir. 2010).

When interpreting state regulations, we must "determine what meaning the state's highest court would give to the law." *See Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) (citation omitted). The Oregon Supreme Court applies a three-step methodology to interpret administrative rules. *Oil Re-Ref. Co. v. Envtl. Quality Comm'n*, 388 P.3d 1071, 1077 (Or. 2017) (noting agency regulations are interpreted under the same framework as statutes); *State v. Gaines*, 206 P.3d 1042, 1050–51 (Or. 2009) (en banc) (setting out the three-step framework for interpreting a statute). "[T]he first step [involves] an examination of text and context." *Brunozzi*, 851 F.3d at 998 (second alteration in original) (quoting *Gaines*, 206 P.3d at 1050). Second, Oregon courts consider the pertinent rule-making history proffered by the parties. *Oil Re-Ref. Co.*, 388 P.3d at 1077; *Gaines*, 206 P.3d at 1050–51. "However, the extent of the court's consideration of that history, and the evaluative weight that the court gives it, is for the court to determine." *Gaines*, 206 P.3d at 1050–51. Third, where a provision's meaning remains unclear after an examination of text, context, and history, "the court may resort to general maxims of statutory construction." *Id.* at 1051.

Here, the plain text of the Rule compels neither party's interpretation. But the Rule's title supports a narrow reading of the Rule, applicable only to "fee payments." *See Sanok v. Grimes*, 662 P.2d 693, 694 n.1 (Or. 1983) (considering a rule's title to aid in its interpretation); *Ha v. Bd. of Parole & Post-Prison*

3

*Supervision*, 386 P.3d 70, 73 (Or. Ct. App. 2016) (same). "Fee" and "payment" are not defined terms in the regulations, but the dictionary definition of "fee" denotes a more limited meaning than "payment." *See Comcast Corp. v. Dep't of Revenue*, 337 P.3d 768, 776 & n.7 (Or. 2014) (noting that Oregon courts look to *Webster's Third New International Dictionary* to discern the meaning of undefined terms). At the very least, the title's reference to "fee payments" militates against the broadest reading of "any payment" proposed by Appellants.

While the text is inconclusive, we also look to the surrounding context. *Lake Oswego Pres. Soc'y v. City of Lake Oswego*, 379 P.3d 462, 469 (Or. 2016). An administrative rule's context includes "other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes." *See Oil Re-Ref. Co.*, 388 P.3d at 1078 (citation omitted). An examination of the Rule's place in the broader context of the Motor Vehicle Price and Sales Disclosure Rules, Oregon Administrative Rule 137-020-0020, supports the Appellees' proffered interpretation of the Rule.

First, the third-party insurance and service products at issue in this matter are the subject of a comprehensive regulatory scheme that employs consistent language conspicuously absent from the rule at hand. *See* Or. Admin. R. 137-020-0020(3)(f), (j), (l), (m) (referring consistently to "additional goods, accessories, services, products or insurance"). While these other rules impose a number of

4

restrictions and obligations on dealerships, notably, they do not require the disclosure of the price paid by a dealership to purchase the products. *Id.* It would be strange that such a requirement would be ambiguously added to Oregon Administrative Rule 137-020-0020(3)(k), while conspicuously missing from the other provisions where it would most naturally be located. This is some indication that the Rule here was not meant to tacitly require such disclosures under the umbrella of "any payments," departing from the specific, unambiguous, and consistent language used elsewhere to regulate the same products.

Second, at least one other disclosure rule would be stripped of its effect altogether by Appellants' proposed expansive interpretation. *See id.* 137-020-0020(3)(d) (the "Limitations on Offering Price Rule"). The Limitations on Offering Price Rule requires a dealer to itemize "the dealer's actual cost for freight . . . and the actual cost of setup and dealer preparation" if those costs will be added to or subtracted from the MSRP of the vehicle. *Id.* The price paid to a third party to freight and prepare a vehicle for sale would fall under the Appellants' proposed reading of "any payment." Their interpretation of the Undisclosed Fee Payments Rule would thus effectively supplant the Limitations on Offering Price Rule, by requiring third-party freight and preparation costs to always be disclosed, regardless of whether the costs affect the vehicle's offering price. In sum, the

surrounding regulatory context heavily favors Appellees' narrow reading of the Undisclosed Fee Payments Rule.

So, too, does the rule-making history. Under Oregon's interpretive framework, rule-making history includes the official commentary.[1] *State v. Serrano*, 210 P.3d 892, 900 (Or. 2009) (en banc); *State v. McClure*, 692 P.2d 579, 585 (Or. 1984) (en banc). The Official Commentary to the Undisclosed Fee Payments Rule supports Appellees' narrow reading. It does so in two ways. First, the Official Commentary's use of the term "payment" informs the way "payment" is understood in the Rule itself. While the parties dispute the meaning of "payment," they agree, and the plain text of the Rule confirms, that the $100 minimum applies only to referral fees. Because the Official Commentary states that the $100 minimum applies to "payment[s]," this reinforces the idea that the rule-makers used the two terms interchangeably. That is, that "payment" means "referral fee." Under this understanding of the key terms, the ostensibly expansive "any payment" language in the Rule's first clause really means "any referral fee," and the Rule requires only the disclosure of referral fees greater than $100.

---

[1] The parties submitted competing affidavits by members of the 2015 advisory committee. But "subsequent statements by legislators are not probative of the intent of statutes already in effect." *Salem-Keizer Ass'n of Classified Emps. v. Salem-Keizer Sch. Dist. 24J*, 61 P.3d 970, 974 (Or. Ct. App. 2003) (alteration marks omitted) (citation omitted). The competing declarations are not probative of the Rule's meaning, and we do not consider them.

Second, the only examples of payments in the Official Commentary are referral fee payments. That neither the Rule nor the Official Commentary ever provides an example of any sort of payment other than a referral fee bolsters the conclusion that the Rule is meant to apply exclusively to referral fee payments.

Based on this analysis, the Rule's second clause is more naturally read to refine the scope of the Rule as a whole to referral fee payments of greater than $100, and not merely to create a limited exception from a broader requirement. Because this meaning is apparent from the Rule's text, context, and history, we need not resort to general maxims of construction. *See Gaines*, 206 P.3d at 1051.

**AFFIRMED**.